A. C. MEYERS v. A. DITTMAR.

1. RES JUDICATA—PRACTICE IN SUPREME COURT.—The decisions of the Supreme Court on a proposition of law, which has been repeatedly announced by the court as at present constituted, will not be varied in deciding a case on appeal which had been before on appeal, and which, after being reversed, was tried and decided in accordance with an opinion of the Supreme Court as then constituted, at variance with more recent decisions.

2. RES ADJUDICATA.—The doctrine, that a proposition of law, once announced in a particular case, on appeal to the Supreme Court, becomes the law of that case on a second appeal, though the law may have been differently construed in the meantime, though sanctioned by high authority, has never been approved by this court.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

This was a suit brought by A. C. Meyers, against the estate

of E. Abat, to recover the amount of a note for $3,000, dated May 8, 1862, and payable in three years. After Abat gave the note, he made a will, and died, leaving his wife executrix, independent of the control of the Probate Court. She had the will probated, filed the inventory, and did what was necessary to administer the estate without regard to the Probate Court. She sold personal property, and paid off the debts of the estate, except to those parties who refused to take the currency of the country, among them the plaintiff in this suit, whose agent admitted that the amount loaned the testator, and for which the note was given, was Confederate money, but gave as a reason for refusing to take it, that it had since depreciated. The executrix died, and Dittmar administered.

To the answer and amended answer, containing allegations to which it is necessary, in view of the opinion, to refer, the plaintiff excepted, that no such defense as that the consideration of the note was Confederate money can be set up after the allowance and approval, which had the effect of a judgment, and which could not be attacked or set aside collaterally, but must be maintained, if at all, by a separate proceeding instituted for that purpose.

The case was tried in the court below, an appeal taken to this court, and it was reversed and remanded. The plaintiff then amended, and alleged that the money borrowed was paid out in the construction of his homestead, at par. Defendant then amended and set up a tender of Confederate money to plaintiff.

Upon the trial, the court below charged the jury in almost the language of the Supreme Court in the case of Estate of E. Abat v. A. C. Meyers, decided at a former term.

Among other charges, the following was given: "If you believe from the evidence that the note sued on was given for Confederate money, the plaintiff cannot recover."

Verdict and judgment for Dittmar, from which Meyers appealed.

*Walder & Upson*, for appellant.

*W. B. Leigh*, for appellee.

Moore, Associate Justice.—All the questions upon which it is necessary for us to pass in this case have been heretofore considered and determined in accordance with the decisions of the Supreme Court of the United States in similar cases. (See Mathews *v.* Rucker, 41 Tex., 636 ; Short *v.* Abernathy, 42 Tex., 94; San Patricio County *v.* McLane, 44 Tex., 392, and other cases not yet reported.) It would, therefore, be a useless consumption of time to reiterate the views which have been already expressed in regard to them.

In the cases to which we have reference, the court directly overruled the entire line of previous decisions on suits upon executory contracts, which, in any way, involved in their consideration what is commercially known as Confederate money.

The instructions given the jury in this case were unquestionably in strict accord with the view formerly entertained by this court in regard to such contracts, and also with what was expressly declared to be the law of this case when it was before the court on a former appeal. (Dittmar, Adm'r, *v.* Myers, 39 Tex., 295.) It may, therefore, be insisted with much force, and no doubt with great weight of authority, that whatever may be thought as to the correctness of the general views formerly entertained by the court, or the influence and control which they should have in other cases now coming before us for determination, the rulings in this particular case on the former appeal must be regarded as *res adjudicata*, and equally conclusive and binding upon this court as upon the court below when before it. This proposition seems, it must be admitted, to be sustained by the very highest authority. (14 S. & M., 100 ; 21 Cal., 548 ; 28 Id., 591 ; 23 Id., 381 ; 3 How., (U. S.,) 424 ; 12 Peters, 488 ; 4 Gilman, (Ill.,) 546 ; 4 Stew. & Port., 79.)

But the law, as ruled in the cases, is, unquestionably, con-

trary to the practice of this court, and has never received its sanction or approval, (40 Tex., 225; 25 Tex., 204;) and, at present, at least, we see no reason for its adoption.   To do so, we would have to disregard our own repeated decisions upon contracts of the character upon which this action is brought, to give effect to one by our predecessors, which has been, by these decisions, directly overruled.   If the practice of this court had been otherwise than it has, and such as it seems to be elsewhere, we should, of course, have no hesitancy in doing this; but as it is, we should have to make a radical change in this respect, merely to affirm what we ourselves have repeatedly held to be an erroneous judgment. This, we are of the opinion, we should not do.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.