Ex Parte Feryl John GRANGER.

No. 1109–91.

Court of Criminal Appeals of Texas, En Banc.

Feb. 10, 1993.
Rehearing Denied April 7, 1993.

*Woerner v. State*, 523 S.W.2d 717 (Tex.Cr.App. 1975), and *Dent v. State*, 504 S.W.2d 455 (Tex. Cr.App.1974).

Logene L. Foster, Sugar Land, for appellant.

Sam W. Dick, Dist. Atty. and Frank Follis and Richard A. Dawson, Asst. Dist. Attys., Richmond, Robert Huttash, State's Atty., Austin, for the State.

---

1. More specifically, we held the evidence insufficient to corroborate the accomplice witness testimony regarding the element of remuneration. See Tex.Code Crim.Proc. art. 38.14; *Fortenberry v. State,* 579 S.W.2d 482, 486 (Tex.Cr. App.1979); but see *Holladay v. State,* 709 S.W.2d 194, 199 (Tex.Cr.App.1986) (overruling *Forten-*

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

On January 3, 1978, Steve Anderson and his wife were murdered in Sugarland. In October of that year, appellant Feryl John Granger was tried and convicted of capital murder for the killing of Steve Anderson. Although the jury charge at the trial included instructions on both murder for remuneration (a capital offense under Texas Penal Code § 19.03(a)(3)) and the lesser included offense of "ordinary" murder (a non-capital offense under Texas Penal Code § 19.02(a)(1)), the jury chose to find appellant guilty of murder for remuneration. On direct appeal, this Court reversed the capital murder conviction on the ground the evidence was, under state statutory law, insufficient to prove the capital element of remuneration. *Granger v. State,* 605 S.W.2d 602 (Tex.Cr.App.1980).[1] We concluded our opinion, inappropriately, with the purely advisory comment that "[a]ppellant may ... be retried for the lesser included offense of murder." *Id.* at 605.

Appellant was later indicted, tried, and convicted of "ordinary" murder based on the same criminal transaction. That conviction, too, was overturned, because of trial error unrelated to the sufficiency of the evidence. *Granger v. State,* 653 S.W.2d 868 (Tex.App.—Corpus Christi 1983), aff'd, 683 S.W.2d 387 (Tex.Cr.App. 1984), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). In its opinion reversing appellant's second conviction, the Thirteenth Court of Appeals[2] specifically rejected his argument that his retrial for murder had been barred by our federal and state constitutional guarantees against being placed in jeopardy twice for the same offense. See U.S. Const. amend. 5; Tex. Const. art. 1, § 14. The court of appeals,

*berry* ); *Farris v. State,* 819 S.W.2d 490, 506–507 (Tex.Cr.App.1990) (discussing *Holladay* and *Fortenberry* ), cert. denied, — U.S. —, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992).

2. Appellant's initial retrial took place in Victoria County, apparently on a change of venue.

citing this Court's advisory statement in its 1980 *Granger* opinion, explained that "the Court of Criminal Appeals has already indicated that appellant could be retried for the lesser included offense of murder." *Granger v. State*, 653 S.W.2d at 877.

Before appellant could be tried again for murder, he filed an application for writ of habeas corpus in district court, arguing that any further prosecution for murder was barred by our federal and state constitutional and statutory double jeopardy guarantees.[3] See Tex.Code Crim.Proc. art. 1.10. The district court denied the requested relief, and the First Court of Appeals affirmed in two unpublished opinions, one on original submission and one on rehearing. In both opinions, the First Court, citing our 1980 *Granger* opinion, again rejected appellant's double jeopardy claim on the ground "[t]he decision of the Court of Criminal Appeals is final and conclusive and constitutes the law of the case." *Ex parte Granger*, No. 01–89–01140–CR (Tex. App.—Houston [1st Dist.] 1990) (opin. on orig. sub. at 3), 1990 WL 76660.

■ We granted appellant's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(2), to consider whether the double jeopardy clause of the Fifth Amendment[4] bars a

prosecution for murder when (1) the accused was previously convicted of capital murder based on the same criminal transaction, (2) the conviction for capital murder was reversed on appeal due to the insufficiency of the evidence to prove the capital element, and (3) the jury charge at the capital murder trial included instructions on both capital murder and the lesser included offense of murder. Compare *State v. Engelking*, 817 S.W.2d 64, 67 (Tex.Cr. App.1991); *Stephens v. State*, 806 S.W.2d 812, 814 n. 4 (Tex.Cr.App.1990), cert. denied, — U.S. ——, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991).[5] We conclude that a further prosecution for the lesser included offense of murder is not barred.

In his brief to this Court, appellant argues, as he did below, that "[t]he State is barred [by the double jeopardy clause of the Fifth Amendment] from prosecuting [him] again for murder after [his] capital murder [conviction was] reversed for insufficiency of the evidence on the [capital] element."[6] Appellant cites *Stephens v. State*, 806 S.W.2d 812, in support of his claim. The State counterargues that the federal double jeopardy clause is not implicated here because a greater offense and a lesser included offense are not the "same" offense for double jeopardy purposes.

---

**3.** The filing of a pretrial application for writ of habeas corpus is, of course, the most appropriate method for asserting a double jeopardy claim. *Abney v. United States*, 431 U.S. 651, 660–661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex.Cr.App.1986).

**4.** The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." This guarantee was made applicable to the states by the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**5.** In *Engelking* and *Stephens*, we held that when a defendant has obtained a reversal of his conviction for a greater offense solely because of insufficient evidence to prove the aggravating element, the Fifth Amendment's double jeopardy clause bars a subsequent prosecution for the lesser included offense. In both of those cases, however, the trial court had neither instructed the jury on the lesser included offense nor erro-

neously refused the State's request for such an instruction.

**6.** Appellant also contends in his brief, as he did below and in his petition, that a further prosecution is barred by the guarantees against double jeopardy contained in Texas Constitution article 1, § 14, and Texas Code of Criminal Procedure article 1.10. However, because appellant proffers no argument or authority as to the protection provided by these state provisions or how that protection differs meaningfully from that provided by the Fifth Amendment, we consider his claims based on these state provisions inadequately briefed and not properly presented for our consideration. *Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Cr.App.1992); *Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Cr.App.1991); *McCambridge v. State*, 712 S.W.2d 499, 501–502 n. 9 (Tex.Cr.App.1986); Tex.R.App.Proc. 74(f) and 203(c). Thus, we do not reach the question of whether these state double jeopardy provisions would bar the retrial of appellant for murder.

I

At the outset, we must address the court of appeals' holding that appellant's double jeopardy claim is barred by the law of the case doctrine. We have previously recognized that "[u]nder the doctrine of 'the law of the case,' where determinations as to questions of law have already been made on a prior appeal to a court of last resort, those determinations will be held to govern the case throughout all its subsequent stages, including a retrial and a subsequent appeal." *Granviel v. State*, 723 S.W.2d 141, 147 (Tex.Cr.App. 1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). The doctrine is required by neither constitution nor statute, however; it is merely a court-made prudential doctrine designed to promote judicial consistency and efficiency. See *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). As such, it should be disregarded when compelling circumstances require a redetermination of the point of law decided on the prior appeal. As our sister court explained a century ago, "[t]he question as to whether [a] court will reconsider, upon a second appeal, what [was] formerly decided in the same case, must always be addressed to the discretion of the court, and determined according to the particular circumstances of that case." *Kempner v. Huddleston*, 90 Tex. 182, 37 S.W. 1066, 1067 (1896).

We believe that compelling reasons do exist for a redetermination of appellant's double jeopardy claim and that the court of appeals abused its discretion in holding otherwise. First, our statement in appellant's original appeal in 1980 that he could be retried for the lesser included offense of murder was, as we stated before, purely advisory. Second, our decision in *Stephens v. State*, 806 S.W.2d 812, cast considerable doubt on the correctness of our earlier advisory comment.[7] Under these circumstances, we conclude that it was incorrect, although understandable, for the court of appeals to rely upon the law of the case doctrine.

II

Having concluded that the law of the case doctrine does not bar appellant's double jeopardy claim, we address next the State's contention that the double jeopardy clause is not implicated in this cause. We note first that, read literally, the double jeopardy clause's prohibition against any person being "twice put in jeopardy of life or limb" for "the same offence" would seem to apply only to criminal prosecutions involving the possibility of capital or corporal punishment. Notwithstanding that constitutional language, the United States Supreme Court held long ago that the guarantee applies to all "crimes," regardless of the form of punishment imposed. *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873).

The Supreme Court also long ago created a test for determining whether conduct that violates two distinct statutory provisions constitutes the "same" offense for double jeopardy purposes:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If application of the *Blockburger* test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the two offenses are the "same" for double jeopardy purposes. *Grady v. Corbin*, 495 U.S. 508, 515, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990); *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977).[8]

Texas Penal Code § 19.03(a)(3) defines the elements of capital murder for remu-

**7.** See footnote five.

**8.** It should be noted that the *Blockburger* test is not the only test for determining which offenses are the "same" for double jeopardy purposes.

See *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Ex parte Ramos*, 806 S.W.2d 845 (Tex.Cr.App.1991).

neration as: (1) a person (2) intentionally or knowingly (3) causes (4) the death of an individual (5) for remuneration or the promise of remuneration. Texas Penal Code § 19.02(a)(1), in turn, defines the elements of murder as: (1) a person (2) intentionally or knowingly (3) causes (4) the death of an individual. Since the lesser offense of murder requires no proof beyond that which is required for the greater offense of capital murder, the two offenses are necessarily the "same" offense for the purposes of double jeopardy. *Stephens v. State,* 806 S.W.2d at 815. Thus, contrary to the State's assertion, the double jeopardy clause *is* implicated here.

### III

We consider next the protection afforded by the double jeopardy clause and whether that protection would be infringed by a retrial of appellant for the offense of murder.

"When we interpret broadly-phrased constitutional provisions such as [the double jeopardy clause], we seek to effectuate the general principles suggested by the language of the text." *Proctor v. State,* 841 S.W.2d 1, 3 (Tex.Cr.App.1992). We do so on the reasonable supposition that those who adopted such broadly-phrased provisions intended for the principles suggested therein to remain vital over time.

Without doubt, the key principle suggested by the language of the double jeopardy clause is that the State may not use the prosecution power as an instrument of oppression. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977). In *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), the Court explained the purpose of the clause thusly:

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged of-

fense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Despite the seemingly absolute language of the double jeopardy clause, the Supreme Court's decisions have consistently recognized that the finality guaranteed by the clause is *not* always absolute, "but instead must accommodate the societal interest in prosecuting and convicting those who violate the law.... [A]bsent governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect, the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding." *Garrett v. United States,* 471 U.S. 773, 796, 105 S.Ct. 2407, 2420, 85 L.Ed.2d 764 (1985) (O'Connor, J., concurring) (citations and some punctuation omitted). See *Tibbs v. Florida,* 457 U.S. 31, 40, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).

In accordance with this view of the double jeopardy clause, the Supreme Court has held that if a jury reaches a verdict of acquittal or the trial judge grants a judgment of acquittal before the jury's verdict,[9] the clause acts as an absolute bar to further prosecution for the same offense even if it appears the acquittal was based on an egregiously erroneous foundation. *Sanabria v. United States,* 437 U.S. 54, 75, 98 S.Ct. 2170, 2184, 57 L.Ed.2d 43 (1978); *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962). This rule plainly furthers the goal of preventing oppressive prosecutorial tactics, for if the State were allowed to reprosecute

9. The Supreme Court has long treated as parallel the directed acquittal entered by the trial judge and the jury verdict of not guilty. See

generally W. LaFave & J. Israel, *Criminal Procedure* § 25.3(c) (2nd ed. 1992).

freely following an acquittal, it would have the power to convict innocent defendants by wearing them down in repeated litigation or by trying them again and again until it found a jury willing to convict. *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978). Unbridled power to reprosecute would also allow the State to "gain an unfair advantage from what it learns in the earlier prosecutions about the strengths of the defense case and the weaknesses of its own." *Proctor v. State*, 841 S.W.2d at 3. Finally, allowing retrial following an acquittal might thwart the decision of a jury to acquit even though it believed the defendant guilty. *United States v. DiFrancesco*, 449 U.S. 117, 130 n. 11, 101 S.Ct. 426, 433 n. 11, 66 L.Ed.2d 328 (1980). See generally W. LaFave & J. Israel, *Criminal Procedure* §§ 25.1(b) & 25.3(b) (2nd ed. 1992) (discussing various rationales behind rule barring retrial after acquittal).

On the other hand, the Supreme Court has also held that reprosecution for the same offense is *not* barred after *conviction* where the defendant has managed through appeal or some other procedure to have his conviction set aside because of reversible error. *Ball v. United States*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). The rationale for this rule was most convincingly stated in *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964):

> While different theories have been advanced to support the permissibility of retrial [following the setting aside of a conviction], of greater importance than the conceptual abstractions employed to explain the ... principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least

doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pre-trial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

The *Ball* rule has been held inapplicable, however, where the appellate reversal was based on the insufficiency of the evidence at trial to sustain a guilty verdict. *Burks v. United States*, 437 U.S. 1, 14–15, 98 S.Ct. 2141, 2148–49, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). In holding a remand for a new trial in such circumstances inconsistent with the double jeopardy prohibition, a unanimous Supreme Court emphasized that if the trial court had done what it should have done, "a judgment of acquittal would have been entered [at the close of the evidence] and, of course, [the defendant] could not be retried for the same offense." *Burks v. United States*, 437 U.S. at 10–11, 98 S.Ct. at 2147. As the Court later explained:

> *Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury. Because the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal. The fact that the determination of entitlement to a judgment of acquittal is made by the appellate court rather than the trial court should not, we thought, affect its double jeopardy consequences; to hold otherwise would create a purely arbitrary distinction between defendants

based on the hierarchical level at which the determination is made.

*Lockhart v. Nelson,* 488 U.S. 33, 38–40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988) (emphasis in original; citations and some punctuation omitted).

So, should this Court interpret the Supreme Court's holding in *Burks* to bar a retrial of appellant in the instant case? We believe the answer must necessarily be "no." An examination of the facts in *Burks* reveals that it was a very different kind of case. There, the United States Court of Appeals for the Sixth Circuit had held the evidence insufficient to support the jury's determination that the defendant was sane at the time of the crime, and had remanded the cause for a determination of whether a verdict of acquittal or a new trial should be ordered. Absent a showing of sanity, the defendant could not have been convicted of the crime charged *or of any other crime arising from the same criminal transaction.* Stated differently, if the trial court had ruled correctly in the first instance that the evidence was insufficient, it necessarily would have entered a directed verdict of acquittal. The Supreme Court, by reversing and providing for an acquittal (instead of remanding for a new trial), put the defendant in the position he would have been in absent the trial court's erroneous failure to enter a directed verdict of acquittal.

Our reversal in 1980 of appellant's original capital murder conviction, in contrast, did not constitute a decision that the State failed to prove the lesser included offense of murder. Because the evidence was insufficient *only* as to the capital element of the greater offense, it is clear both that, had the trial judge acted properly, only the lesser offense of murder would have gone to the jury and *it would have resulted in a conviction.* We know that it would have resulted in a conviction because the jury's actual verdict showed that it found the existence of every element of the lesser included offense. Since appellant has never been acquitted of *murder,* the rationales (see above) supporting the rule barring re-

trial following acquittal simply are not applicable to his reprosecution for *murder.*

This cause does not present a situation involving oppressive prosecutorial tactics of the sort prohibited by the double jeopardy clause. The State is not being given a second chance to prove an offense which it failed to prove at an earlier trial. Rather, appellant is merely being put in the approximate position he would have been in absent the trial court's error in submitting the capital offense charge to the jury. Granting double jeopardy relief to appellant because of that error would be an unwarranted windfall rather than a necessary protection from governmental oppression. Accord, *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988) (denying double jeopardy relief on essentially identical facts), cert. denied, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989); *Ex parte Beverly,* 497 So.2d 519 (Ala.1986) (same).

■ The dissent argues that appellant should not have to face the ordeal of retrial because the State overreached in pursuing conviction for capital murder at his original trial. Assuming *arguendo* that the State erred,[10] the fact remains that the double jeopardy clause does not bar retrial simply because of error on the part of the prosecution. *United States v. Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589. Moreover, in a very real sense, the State is required to pay for its earlier "mistake." It now must expend part of its limited resources to retry appellant as well as risk the possibility he will be acquitted.

### IV

Appellant's reliance upon *Stephens v. State,* 806 S.W.2d 812, is misplaced. In *Stephens,* the defendant was originally tried for aggravated rape. The jury at the aggravated rape trial was *not* instructed on the lesser included offense of "ordinary" rape. Although the defendant was convicted, his conviction was overturned on appeal because of the insufficiency of the evidence to prove the aggravating element. He was later indicted for "ordinary" rape

**10.** See footnote one.

based on the same criminal episode, but before he could be tried he filed an application for writ of habeas corpus in the trial court, claiming the rape prosecution was barred by the double jeopardy clause. The trial court denied relief, but the Fifth Court of Appeals agreed with the defendant that retrial was barred. We affirmed the judgment of the court of appeals, but we were careful to point out repeatedly in our opinion that at the original trial, the State had chosen not to request an instruction on the lesser included offense of rape. *In other words, the State had, at the first trial, failed to pursue the lesser included offense charge after jeopardy had attached to it and was, therefore, forever barred from prosecuting it again.*

As the court correctly explained in *Ex parte Beverly*, 497 So.2d at 525, when faced with essentially identical facts:

> Once the jury [at the first trial] was impaneled and sworn and the indictment [alleging the greater offense] was read, jeopardy attached on [the] lesser [included] offense. Thereafter, the [defendant] was entitled to have his case tried to completion before that jury unless there was a "manifest necessity" for terminating the trial proceedings.

> [However,] the jury ... was not instructed on [the lesser offense]. It appears that the state simply chose not to pursue a conviction for that offense, although the [defendant] was in jeopardy as to that offense. Had it so elected, the state could have requested the additional instruction [on the lesser offense]. Therefore, with respect to the [lesser] offense ..., the trial was abandoned or aborted by the state without manifest necessity.

(Citations omitted.)

Although it is not clear from the record of appellant's first trial that the State actually requested an instruction on the lesser included offense of murder, it is clear that such an instruction was given and that the State made no objection to it.

For the foregoing reasons, we hold that the court of appeals did not err in affirming the trial court's denial of habeas corpus

relief. The judgment of the court of appeals is AFFIRMED.

CLINTON, Judge, dissenting.

Once again the Court is called upon in this cause to address the question whether following acquittal of a greater inclusive offense an accused may be prosecuted for a lesser included offense for which the evidence at the first trial was legally sufficient, consistent with the Fifth Amendment Double Jeopardy Clause. See *Stephens v. State*, 806 S.W.2d 812 (Tex.Cr.App.1990). Specifically we must address one of the questions expressly left open in *Stephens*, *viz:* "whether the Double Jeopardy Clause [bars] a subsequent prosecution if the jury charge ... included an instruction on the lesser included offense...." *Id.*, at 814, n. 4.

### I.

Appellant was originally indicted, tried and convicted of murder for remuneration, a capital offense under V.T.C.A. Penal Code, § 19.03(a)(3). This Court heard the appeal pursuant to Article 37.071 § (h), nee § (f), V.A.C.C.P., and held the evidence insufficient to corroborate accomplice witness testimony as to the remuneration element of the offense. *Granger v. State*, 605 S.W.2d 602 (Tex.Cr.App.1980) (hereinafter, *Granger I*). We ordered the judgment to be reformed to reflect an acquittal as to capital murder, but concluded our opinion with the observation that "[a]ppellant may, however, be retried for the lesser included offense of murder. See *Ex parte Harris* (Tex.Cr.App.1979) 600 S.W.2d 791." *Id.*, at 605.

Accordingly, appellant was reprosecuted for the lesser included offense of murder, and once again convicted. His second conviction was reversed, however, by the Thirteenth Court of Appeals for trial error. *Granger v. State*, 653 S.W.2d 868 (Tex. App.—Corpus Christi 1983) (hereinafter, *Granger II*). Along the way the Corpus court also addressed his contention that trial for the lesser offense was jeopardy barred. The court wrote:

"In his fourth ground of error, appellant argues that his retrial violated his constitutional rights against double jeopardy. We disagree. Where a conviction has been reversed on appeal because the evidence is insufficient to prove the aggravating elements of capital murder, retrial on the lesser included offense is permitted. *Cruz v. State*, 629 S.W.2d 852 (Tex.App.—Corpus Christi 1982, pet. ref'd). Moreover, the Court of Criminal Appeals has already indicated that appellant could be retried for the lesser included offense of murder. *Granger [I]*, supra. Appellant's fourth ground of error is overruled."[1]

Finding the evidence at the second trial to be sufficient to support the guilty verdict for the lesser offense of murder, the court of appeals held that appellant could be tried again for that lesser offense. Although this Court granted petitions for discretionary review from both the State and appellant, and ultimately affirmed the judgment of the court of appeals, *Granger v. State*, 683 S.W.2d 387 (Tex.Cr.App.1984) (*Granger III*), we did not address that court's holding that retrial for murder following appellate acquittal for the original capital offense did not violate the Double Jeopardy Clause.

Appellant then interposed a pretrial writ of habeas corpus in which he again argued that to try him a second time following this Court's entry of a judgment of acquittal for the greater offense of capital murder would violate double jeopardy. The habeas court denied relief. The First Court of Appeals affirmed the habeas court's judgment on May 3, 1990, and denied appellant's motion for rehearing with written opinion on May 31, 1990.[2] Both opinions were unpublished. *Ex parte Granger*, No. 01–89–01140–CR (Tex.App.—Houston [1st],

delivered May 3, 1990, 1990 WL 76660, op. on reh. delivered May 31, 1990, 1990 WL 71848) (*Granger IV*). In its opinion on original submission the court of appeals first opined that "*Blockburger [v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ] does not preclude a retrial in our case because the evidence found insufficient by the Court of Criminal Appeals was germane only to the capital murder offense and is not a necessary element of the State's murder case." Slip op. at 2–3. The court of appeals did not rely on this view in affirming denial of habeas relief, however. Instead the court invoked the doctrine of law of the case, holding that it was bound by the court of appeals' earlier holding in *Granger II* that retrial after acquittal for capital murder was not jeopardy barred, quoting that part of the Corpus Christi court's opinion that we have already set out *ante*.

In his motion for rehearing appellant cited this Court's recent opinion in *Stephens v. State*, supra, wherein we held that

"when a defendant has obtained a reversal of a conviction for a greater offense solely on the ground that there was insufficient evidence to prove the aggravating element of that offense, the Double Jeopardy Clause bars a subsequent prosecution for a lesser included offense."

*Id.*, at 819. In its opinion on rehearing the court of appeals acknowledged our decision in *Stephens*, supra, but found that it was

"distinguishable because it repeatedly emphasized that Stephens was entitled to relief because he had asked for, and been refused, a jury instruction on the lesser included offense of murder. *Id.* at n. 3 and *passim*. The court declined to state whether Stephens would have won relief if the jury charge had contained a murder instruction or if the trial judge had

---

1. In *Cruz v. State*, supra, the court of appeals simply reiterated and followed the holdings of *Ex parte Harris*, supra, and its predecessors, *Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978) (Opinion on rehearing), and *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979), that conviction for a lesser included offense was permissible after acquittal for the greater inclusive offense.

2. Appellant's original conviction for capital murder was obtained in Matagorda County. His initial retrial for the lesser included offense of murder occurred in Victoria County, and was appealed to the Corpus Christi court. The current prosecution arises in Fort Bend County, where the offense took place. Accordingly, appeal from appellant's pretrial application for writ of habeas corpus is to the First Court of Appeals in Houston.

refused the State's request for one. *Id.* at n. 4. We do not have the record of appellant's original trial before us, but the opinion reversing that conviction does not mention that the trial court denied appellant's request for a jury instruction on the lesser included offense of murder. Thus, appellant has not brought himself within the rule in *Stephens.*" [3]

Slip op. at 2–3. Moreover, the court of appeals concluded, it was "bound" by this Court's holding in *Granger I* that retrial was permissible, our later opinion in *Stephens* notwithstanding. Slip op. at 3.[4] Appellant's motion for rehearing was accordingly denied.

Thus, over the course of its two opinions in *Granger IV,* the court of appeals essentially articulated three reasons appellant was not entitled to relief. Two of those reasons involve the law of the case doctrine. Because this Court held in *Granger I* that appellant could be retried for murder, and because the Corpus Christi court reprised that holding in *Granger II,* the court of appeals believed it could not hold otherwise, despite any subsequent change in the law effectuated by *Stephens.* And because it presumed the jury had been authorized in the original trial to convict for the lesser included offense of murder, the court of appeals believed that at any rate the jeopardy bar recognized in *Stephens* does not apply in this cause. We granted appellant's petition for discretionary review to examine these holdings. Tex.R.App.Pro., Rule 200(c)(2).

**3.** Review of the record in *Granger I* reveals that the jury was indeed authorized to convict appellant of the lesser included offense of murder. However, the trial court appears to have included the instruction *sua sponte.* In any event, neither appellant nor the State objected.

**4.** Along the way the court of appeals noted "that *Fortenberry v. State,* 579 S.W.2d 482, 486 (Tex.Crim.App.1979), which was the basis for the original reversal by the Court of Criminal Appeals, has been overruled. *Holladay v. State,* 709 S.W.2d 194, 199 (Tex.Crim.App.1986)." Slip op. at 3. Although the court of appeals remarked on this development, no part of its decision is premised upon it. That is just as well, for in keeping with *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978),

## II.

It is now clear that our "holding" in *Granger I* that appellant could be reprosecuted for the lesser included offense of murder was purely advisory. At that juncture the State had not purported to reprosecute appellant for any offense. This Court's assurance that it could was nothing more than a bald "attempt[ ] to decide an issue that [did] not arise from an actual controversy capable of final adjudication." *Garrett v. State,* 749 S.W.2d 784, at 803 (Tex.Cr.App.1988) (Opinion on State's motion for rehearing). See also *Keith v. State,* 782 S.W.2d 861 (Tex.Cr.App.1989). Indeed, in *Garrett* we acknowledged that we had mistakenly issued advisory opinions in, *inter alia, Ex parte Harris,* supra, and our opinion in *Granger I* itself. 749 S.W.2d at 804, n. 4. Because we did not yet have before us "an actual controversy capable of final adjudication" as to the permissibility of retrial on the lesser included offense, it was not within our judicial power in *Granger I* to issue a binding decision on that question. Therefore, our palliative at the end of that opinion can hardly be regarded as law of the case.

On the other hand, the question of permissibility of the retrial under the Double Jeopardy Clause was squarely presented, addressed and answered in *Granger II.* Thus, though the Corpus Christi court relied upon our earlier advisory opinion in *Granger I,* and its own opinion in *Cruz v. State,* supra, which in turn cited other advi-

and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), this Court reformed the judgment in *Granger I* to reflect an acquittal for the offense of capital murder. 605 S.W.2d at 605. It has long been held that a judgment of acquittal, however erroneous, will bar re-prosecution for the same offense. *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Smalis v. Pennsylvania,* 476 U.S. 140, at 144, n. 7, 106 S.Ct. 1745, at 1748, n. 7, 90 L.Ed.2d 116, at 121, n. 7 (1986). See also *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

sory opinions from this Court,[5] its opinion in *Granger II* was in no wise advisory. We therefore must decide whether the holding in *Granger II* is law of the case, and, as such, is controlling upon the present claim.

"The legal principle or doctrine of 'the law of the case' in its most basic form provides that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue should there be another appeal." *Ware v. State,* 736 S.W.2d 700, at 701 (Tex.Cr.App.1987), citing 6 Tex.Jur.3d *Appellate Review* § 901 (1980). Law of the case is a court-made doctrine, however, and its application in Texas has never been "inflexible." *Burns v. Ledbetter,* 56 Tex. 282, at 283 (1882). It is "intended to achieve uniformity of decision as well as judicial economy and efficiency." *Hudson v. Wakefield,* 711 S.W.2d 628, at 630 (Tex.1986). Therefore, although the law of the case doctrine does not limit the authority of an appellate court to revisit issues resolved in a previous appeal, *Connecticut General Life Ins. Co. v. Bryson,* 219 S.W.2d 799, at 800 (Tex.1949), it has been said as a matter of policy that deviation from the rule should be reserved for "exceptional" circumstances, and that "it should not be departed from even for the purpose of reinvestigating the correctness of the former decision, save for urgent reasons." *Frankland v. Cassaday,* 62 Tex. 418, at 422 (1884), quoting and applying language in *Burns v. Ledbetter,* supra. "The question as to whether the court will reconsider, upon a second appeal, what it has formerly decided in the same case, must always be addressed to the discretion of the court, and determined according to the circumstances of that case." *Kempner v. Huddleston,* 90 Tex. 182, at 185, 37 S.W. 1066, at 1067 (1896).

Law of the case will not apply where either pleadings or proof have materially changed between appeals. *Rose v. Baker,* 143 Tex. 202, 183 S.W.2d 438 (1944). Where the facts and issues remain the same in a second appeal, the most common

"exceptional" circumstance to persuade appellate courts in Texas to reexamine an earlier holding is that it appears to have been "clearly erroneous." See cases collected at Annotation: Law of the Case—Erroneous Decision, 87 A.L.R.2d 271 § 6, at 309–311. As a kind of corollary to this exception, it has been held that where a discretionary review court has changed the law upon which an earlier lower appellate decision relied, or has announced a new legal standard at odds with the earlier decision of the lower appellate court, it may be inappropriate to fall back upon law of the case in a subsequent appeal. *McCrea v. Cubilla Condominium Corp.,* 769 S.W.2d 261, at 263 (Tex.App.—Houston [1st] 1988, pet. den.). Cf. *Meyers v. Dittmar,* 47 Tex. 373 (1877) (Texas Supreme Court declined to follow its own disposition in an earlier appeal where it had revised the law in the interim). Like the Supreme Court we believe that an appellate court's "duty to administer justice under the law ... outweighs [its] duty to be consistent." *Connecticut General Life Ins. Co. v. Bryson,* supra, at 800.

Here the circumstances calling for reconsideration of appellant's jeopardy claim despite earlier disposition of that claim in *Granger II* are compelling. As already noted, the only authority undergirding the holding in *Granger II* is a string of advisory opinions issuing from this Court. Those opinions may ultimately be traced to *ipse dixit* in the Court's opinion in *Moss v. State,* 574 S.W.2d 542 (Tex.Cr.App.1978) (Opinion on rehearing). Indeed, this Court did not attempt a "reasoning" of the matter, as called for by Judge Onion in dissent in *Moss,* 574 S.W.2d at 546, until the opinion on original submission in *Garrett v. State,* supra. There a plurality of the Court characterized "*Granger [I]* and its precursors back to *Moss* [as] long on rote but woefully short on analysis." 749 S.W.2d at 794, n. 13. After full consideration of the question, the plurality opined that retrial for any lesser included offense as defined by *Blockburger* following appellate acquittal on the greater inclusive of-

---

**5.** Each of the opinions cited by the Corpus Christi court in *Cruz* was later identified by this Court as being advisory. See and compare note 1, *ante,* with *Garrett,* supra, at 804, n. 4.

fense would be jeopardy barred. This view was necessarily rendered *obiter dictum* when, on rehearing, a majority of the Court held that the court of appeals' holding below had been advisory. 749 S.W.2d at 804. However, the "precise issue addressed" by the plurality on original submission in *Garrett* was later presented squarely in *Stephens v. State*, 806 S.W.2d at 814, n. 5, and was resolved by a majority of the Court in much the same way, over a single dissent. Thus, what rote had wrought, *Stephens* righted.

Our opinions in *Garrett* and *Stephens* were handed down after *Granger II*, but before the court of appeals' opinions in *Granger IV*, the present appeal. In *Garrett* this Court rendered the precedential value of the authorities cited in *Granger II* nil. And only in *Stephens* did we provide a *ratio decidendi* for deciding whether retrial of a lesser included offense is permissible after appellate acquittal of a greater offense. The upshot is that, other than the court of appeals' own response to *Stephens* in its opinion on rehearing in *Granger IV*, a response that was gratuitous if the holding in *Granger II* is deemed the law of the case, appellant has yet to receive a principled appellate ruling on his double jeopardy claim.

Moreover, the instant appeal involves more than just a question of whether appellant's first retrial for the lesser included offense of murder was jeopardy barred, as in *Granger II*. Because the judgment of conviction in that retrial was reversed for trial error, appellant now faces yet another trial. It is true that another trial on the murder charge following reversal for trial error represents continuing jeopardy. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Nevertheless, the reality is that if the Corpus Christi court was mistaken in *Granger II* to rely upon this Court's *ipse dixit* in *Moss* and *Granger I* to

hold appellant's first retrial for the lesser included offense of murder was permissible, then not only has appellant been retried once already for what may prove under a *Stephens* analysis to constitute the "same" offense for jeopardy purposes, but the State now proposes to try him a third time for that offense. To foreclose further appellate review under these circumstances in the name of law of the case would seem to exalt judicial exigency over justice. See *McCrea v. Cubilla Condominium Corp.,* supra.

I do not take lightly the considerable discretion vested in the court of appeals to decide when circumstances warrant that it exercise its authority to revisit an appellate claim, and when they do not. Nevertheless, given the peculiar circumstances presented here, I agree with the majority that to the extent it depended upon *Granger II* as the law of the case, and therefore dispositive of the present jeopardy claim, the court of appeals in *Granger IV* abused its discretion. Because the court of appeals alternatively disposed of the jeopardy claim on the merits, distinguishing *Stephens* in its opinion on rehearing, I proceed to a review of that aspect of the case.

### III.

In *Stephens* the defendant had requested a jury instruction authorizing conviction on the lesser included offense of rape, but his request was denied. 806 S.W.2d at 814, n. 3. In this cause the court of appeals presumed, because this Court did not indicate otherwise in *Granger I*, that there was no denial of a requested charge on the lesser included offense of murder.[6] Without any further analysis the court of appeals simply announced that for this reason "appellant has not brought himself within the rule in *Stephens.*" Slip op. at 3. That it was alluded to only in footnote would hardly seem to make denial of a requested instruction a *sine qua non* of our holding in *Stephens.*[7] Indeed, the ultimate holding

---

**6.** See note 3, *ante.*

**7.** Our opinion cannot fairly be read to hold, as the court of appeals believes it did, "that Ste-

phens was entitled to relief *because* he had asked for, and been refused, a jury instruction on the lesser included offense of murder." See *ante,* at 515. (Emphasis supplied.)

of *Stephens* is stated broadly, and, at least facially, does not depend upon that circumstance. 806 S.W.2d at 819. Nevertheless, because we did not expressly address the question in *Stephens*, see 806 S.W.2d at 814, n. 4, I turn now to decide whether our holding there is predicated upon the absence of an instruction authorizing conviction on the lesser included offense before it can be said that appellate acquittal of a greater inclusive offense bars retrial for that lesser included.

### A.

Our holding in *Stephens* was grounded on well established jeopardy principles. "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence" is, to put it in the current parlance of the United States Supreme Court,[8] that an acquittal "terminates" jeopardy. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, at 571, 97 S.Ct. 1349, at 1354, 51 L.Ed.2d 642, at 651 (1977). Since *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), it has been established that an appellate reversal on the basis of insufficient evidence operates as the functional equivalent of an acquittal, and thus terminates jeopardy. Once jeopardy terminates in an acquittal, the Double Jeopardy Clause protects against a second prosecution for the "same" offense. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Whether a subsequent prosecution is for the "same" or a different offense depends upon application of the test articulated in

*Blockburger v. United States*, 284 U.S. 299, at 304, 52 S.Ct. 180, at 182, 76 L.Ed. 306, at 309 (1932), *viz:*

> "... that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Greater inclusive and lesser included offenses are, under this test, "by definition the 'same' for purposes of double jeopardy." *Brown v. Ohio*, 432 U.S. at 168, S.Ct. at 2227, L.Ed.2d at 196.[9] The simple confluence of principles developed in *Burks/ Greene* and *Brown v. Ohio* led us to conclude, first by a plurality on original submission in *Garrett v. State*, supra, and later by majority opinion in *Stephens*, that prosecution for a lesser included offense following appellate acquittal for the greater inclusive would violate the protections of the Double Jeopardy Clause.

Application of that holding to the instant cause would seem to be straightforward. In keeping with *Burks* and *Greene*, this Court reformed the judgment in *Granger I* to reflect an acquittal for the offense of capital murder. *Granger v. State*, 605 S.W.2d 602, 605. Thus, jeopardy has terminated, and, consistent with *Brown v. Ohio*, appellant may not be prosecuted again for the "same" offense. The present prosecution is unquestionably for the "same" offense under the *Blockburger* test.[10]

The State presently advances no reason that the presumed presence of a lesser

8. See Justices of *Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

9. This is not to say that *Blockburger* supplies the exclusive test for "sameness" under the Double Jeopardy Clause. 432 U.S. at 166, n. 6, S.Ct. at 2226, n. 6, L.Ed.2d at 195, n. 6. Subsequent prosecution for an offense that is not the "same" under the test in *Blockburger* may still be jeopardy barred under *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

10. The indictment in *Granger I* charged that appellant "on or about the 3rd day of January, A.D., 1978 ... did then and there intentionally and knowingly ... cause the death of an indi-

vidual, Steve Anderson, by shooting him with a gun; and [appellant] did then and there cause the death of the said Steve Anderson for remuneration and the promise of remuneration, namely, money from the proceeds of life insurance and the estate of Steve Anderson and Marjorie Anderson." The currently pending indictment charges that appellant "on or about the 3rd day of January, A.D., 1978 ... did then and there intentionally and knowingly cause the death of an individual, Steve Anderson, by shooting him with a gun." The murder indictment alleges no element that was not also alleged identically in the capital murder indictment.

included instruction in the jury charge submitted in *Granger I* should change the result. In *Stephens*, however, the State did raise several arguments as to why *Burks* and *Brown* should not preclude reprosecution for a lesser included offense. In the absence of a fuller response by the State in the present cause, I will revisit the arguments advanced in *Stephens* to decide whether the presence of a lesser included offense instruction should make a difference.

### B.

The State argued in *Stephens* "that under *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the State is not precluded from reprosecuting a defendant so long as it does not affirmatively impair the [defendant's] double jeopardy protection." 806 S.W.2d at 817. We read *Jeffers* then, and I continue to read it now, to support the proposition that a defendant may waive double jeopardy protections. See also *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). Here, however, the court of appeals presumed appellant requested and received a lesser included offense instruction. We know, at any rate, that he did nothing to prevent the inclusion of that instruction. See n. 3, *ante.* Had his original jury acquitted appellant of capital murder, as we held in *Granger I* was its only rational option, it could have proceeded to consider, and presumably would have convicted appellant, of the lesser included offense of murder. Under these circumstances appellant cannot be held accountable for the necessity of a second trial before the State can obtain a valid conviction in this cause. If anything, the necessity for a retrial is attributable to the fact that the State originally pursued conviction for the greater inclusive offense, an offense it had legally insufficient evidence to prove. See *Garrett v. State*, supra, at 794. Appellant did not "waive" his jeopardy protection. *Jeffers* is even less apposite here than in *Stephens.*

The State also urged us in *Stephens* to adopt a "continuing jeopardy" approach to hold that retrial is permissible on a lesser included offense. The State's argument was premised upon cases such as *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), and *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987). Indeed, it has been the law since *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), that a retrial following reversal on appeal for trial error is not jeopardy barred. Perhaps the best justification for the rule is that articulated by Justice Harlan in *United States v. Tateo*, 377 U.S. 463, at 466, 84 S.Ct. 1587, at 1589, 12 L.Ed.2d 448, at 451 (1964), *viz:*

> "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to a conviction."

Continuing jeopardy cases proceed upon the assumption, however, that appellant has a conviction against him which he seeks to have set aside on the basis of some error which rendered his trial unfair. Retrial in these circumstances is justified by the fact that "criminal proceedings against an accused have not run their full course." *Price v. Georgia*, 398 U.S. at 326, 90 S.Ct. at 1759, 26 L.Ed.2d at 304. *Burks* and *Greene* carved out an exception to the *Ball* rule, however, holding that a reversal for insufficient evidence, as opposed to trial error, will not justify reprosecution for the identical offense. Noting the above language from *Tateo*, the Supreme Court opined in *Burks* that:

> "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with

respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U.Chi. L.Rev. 365, 370 (1964).

"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. [Footnote omitted.] Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on

review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty."

437 U.S. at 15–16, 98 S.Ct. at 2149–2150, 57 L.Ed.2d at 12–13. See also *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). On the strength of *Burks* we held in *Stephens* that when the conviction was reversed on the basis of insufficiency of the evidence, jeopardy terminated, and the doctrine of continuing jeopardy did not apply. 806 S.W.2d at 818.

It is true that in neither *Stephens* nor *Granger I* did this Court determine that the evidence had been insufficient to prove the lesser included offense. Under these circumstances it is possible to view the jury's verdict of guilty of the greater inclusive offense as an implied conviction for the lesser. Because the appellate court did not hold the evidence insufficient as to the lesser offense, the argument goes, jeopardy should continue as to the implied conviction, *Burks* and *Greene* notwithstanding. See Scott R. Cordes, Note, Off on a Technicality, 33 S.Tex.L.Rev. 287 (1992). But the fact remains that this Court rendered a judgment of acquittal on the greater offense, and did not—indeed, could not—reform the judgment to reflect conviction for the lesser included offense. See *Garrett v. State*, supra, at 793–94.[11] Presumably the

**11.** Actually, precedent does exist for the proposition that in very narrow circumstances an appellate court can reform a judgment to reflect conviction for an offense other than that reflected in the judgment, under a predecessor to former Article 44.24(b), V.A.C.C.P., now Tex. R.App.Pro., Rule 80. In *Garcia v. State*, 141 Tex.Cr.R. 444, 149 S.W.2d 113 (1941), this Court reformed a judgment of conviction for the offense of sale of obscene materials, for which the charging instrument proved inadequate on appeal, to reflect conviction instead for possession of obscene materials for sale. In that cause, however, the indictment had duplicitously alleged both offenses in a single count, *sans* objection, and the jury returned a general verdict of "guilty as charged in the indictment." The jury assessed punishment at the minimum sentence for the possession offense, so there was no call to remand the cause for reassessment of punishment.

We could not similarly have reformed appellant's judgment in *Granger I* under former Article 44.24(b), supra. In *Granger I,* unlike *Garcia,* a new punishment would have to be assessed, something this Court lacks authority to do.

*Ocker v. State,* 477 S.W.2d 288, at 291 (Tex.Cr. App.1972). Thus, a remand would have been necessary. Because capital murder prosecutions are always tried to a jury, see Articles 1.14(a) and 37.071, V.A.C.C.P., his punishment on remand would have to be decided by a jury as well. E.g., *Ellison v. State,* 432 S.W.2d 955, at 957 (Tex.Cr.App.1968); *Hickman v. State,* 548 S.W.2d 736 (Tex.Cr.App.1977). And because prior to the addition of subsection (b) to Article 44.29, V.A.C.C.P., see Acts 1987, 70th Leg., ch. 179, p. 1388, § 1, eff. August 31, 1987, there was no authority in Texas to empanel a separate jury to determine punishment alone, an entire retrial would have been required. See *Ellison, Ocker,* and *Hickman,* all supra. Even after the 1987 amendment to Article 44.29, supra, a separate jury may be empaneled only after appellate reversal solely for "error or errors made in the punishment stage of the trial[.]" That at the conclusion of the guilt/innocence phase of trial appellant's jury convicted him irrationally of the greater inclusive offense hardly seems to qualify as error at the punishment phase alone. In any event, remand for punishment only in a capital

Legislature could authorize reform of a criminal judgment to reflect conviction for a lesser included offense where the evidence proves insufficient to establish the greater, and remand the cause for reassessment of punishment.[12] See *Note,* supra, at 310. Such legislation would obviate the jeopardy problem, since a verdict of guilty could thereby be reinstated without necessity of a retrial. See *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986). In the present cause, however, there was no such reformation, and jeopardy terminated in an acquittal. By at least not opposing the lesser included offense instruction that was given in *Granger I,* appellant did all that was within his power to prevent the necessity of two trials for the State to obtain a legitimate conviction for the offense of murder. The premature termination of jeopardy can only be attributed to the fact that the State risked proceeding to verdict on a greater offense than the evidence was legally sufficient to prove. Surely this must be factored into the balance of competing interests in deciding whether appellant may justifiably be put to the "embarrassment, expense and ordeal and ... continuing state of anxiety and insecurity," *Green v. United States,* 355 U.S. 184, at 187–88, 78 S.Ct. 221, at 223, 2 L.Ed.2d 199, at 204 (1957), of a second trial. To be remembered is that "[t]he prohibition is not against being twice

punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." *Ball v. United States,* 163 U.S. at 669, 16 S.Ct. at 1194, 41 L.Ed. at 302. When the State's first bite at the apple proves overlarge, that its evidence was sufficient to show a lesser offense "does not satisfactorily explain why [appellant] should be deprived of the constitutional protection against a second trial." *Breed v. Jones,* 421 U.S. 519, at 534, 95 S.Ct. 1779, at 1788, 44 L.Ed.2d 346, at 358 (1975). This is particularly true considering that by legislation the State could provide for reformation of judgments so that it could obtain legitimate convictions for a lesser included offenses under circumstances such as those presented here without recourse to a second prosecution. See *United States v. Wilson* and *Morris v. Mathews,* both supra.

I would reiterate the broad holding of *Stephens* "that when a defendant has obtained a reversal of a conviction for a greater offense solely on the ground that there was insufficient evidence to prove the aggravating element of that offense, the Double Jeopardy Clause bars a subsequent prosecution for a lesser included offense." 806 S.W.2d at 819.[13] Accordingly, I would reverse the judgment of the court of appeals and remand the cause to the trial court with orders that the indictment be

---

case, such as *Granger I,* was not authorized until the 1991 regular legislative session. Acts 1991, 72nd Leg., ch. 838, p. 2900, § 2, eff. September 1, 1991.

**12.** Arguably the Legislature has already done so in capital cases, since under current Article 44.-29(c), V.A.C.C.P., see Acts 1991, 72nd Leg., ch. 838, p. 2900, § 2, eff. September 1, 1991, a capital case reversed on appeal for "error affecting punishment only," can be remanded for a new punishment proceeding. A verdict of guilty of capital murder on evidence that supports only the lesser offense of murder might be said to be an "error affecting punishment only[.]" Belying this argument, however, is the fact that the new punishment proceeding authorized by Article 44.29(c), supra, is to be "under Article 37.071[, V.A.C.C.P.,]" which contemplates reassessment of punishment for the capital offense.

**13.** The majority does not simply fail to acknowledge the broad holding in *Stephens,* it effectively disowns it. In a rather astounding piece of revisionism, Judge Campbell recasts his own opinion in *Stephens* to reflect a theory of abandonment. Slip op. at 10–11. By this theory jeopardy attaches to the lesser included offense at the commencement of trial (inasmuch as it is contained in the allegation of the greater inclusive offense). When the State fails to request a jury instruction on the lesser included offense, however, and the jury acquits of the greater inclusive offense, jeopardy terminates as to the lesser offense too, the State having abandoned it at trial. Cf. Ex parte Preston, 833 S.W.2d 515 (Tex.Cr.App.1992). While this may represent a preferable resolution to the issue presented in *Stephens,* it most assuredly does not reflect what the Court held there.

dismissed. Because the majority does not, I respectfully dissent.