**Rocky Allen MORRIS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–02–00143–CR.**

Court of Appeals of Texas, Eastland.

April 17, 2003.

John H. Hagler, Dallas, Rocky Allen Morris, Lovelady, for appellant.

Bill Hill, Dist. Atty., Criminal Dist. Attorney–Appellate Section, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCLOUD, S.J.[1]

Opinion

AUSTIN McCLOUD, Senior Justice (Retired).

Appellant filed a motion for postconviction DNA testing of biological material

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

pursuant to TEX. CODE CRIM. PRO. ANN. art. 64.01 et seq. (Vernon Pamph. Supp.2003). The trial court found that appellant's identity was not and is not in issue in the case and denied appellant's motion without a hearing. Appellant appeals. We affirm.

In 1995, the jury convicted appellant of aggravated sexual assault, found the enhancement allegation to be true, and assessed appellant's punishment at confinement for 60 years and a fine of $10,000.

Article 64.01 permits a convicted person to submit to the convicting court a motion for forensic DNA testing of evidence containing biological material. Appellant sought DNA testing of spermatozoa found in the victim's vagina. Article 64.03 contains several requirements that the convicted person must establish in order to be entitled to DNA testing. One of the requirements that the convicting court must find is that "identity was or is an issue in the case." Article 64.03(a)(1)(B). The convicting court made the following findings:

> After considering the pleadings of both parties, the DNA statute, and the Court's personal experience and knowledge, the Court denies Morris's motion for postconviction DNA testing based on the following findings:
>
> 1. In relation to this case, the Southwestern Institute of Forensic Sciences (SWIFS) has retained five pieces of physical evidence collected as part of the rape kit performed on the victim: item 1, a vaginal swab; item 2, a vaginal smear; item 4, pubic hair combings; item 5, pubic hair cuttings; and item 6, debris collections (the gloves, scissors, and other packaging from the rape kit). None of this evidence was subjected to DNA testing at the time of trial, but the Parkland physician that performed the rape examination observed intact spermatozoa on the vaginal smear.
>
> 2. Morris's identity was not and is not an issue in this case. [The victim] testified unequivocally that Morris was the person that raped her. [The victim] had known Morris, her mother's boyfriend, for four years prior to the rape and had lived in his home for approximately six weeks. Further, Morris admitted to [the victim's] mother on several occasions that he had "attacked" [the victim] but denied there was "intercourse," and some of these admissions were recorded and introduced into evidence at trial. . . . In addition, Morris did not contend during closing argument or at any other phase of trial that he was not the person who sexually assaulted [the victim]. Moreover, Morris does not assert in his motion any facts or refer to any record citations that would demonstrate that his identity as the rapist was an issue. For this reason, Morris does not meet his burden under the statute. See TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B) (Vernon Supp.2002).
>
> Based on the above findings, the court DENIES Morris's request for postconviction DNA testing of the rape kit items in SWIFS's possession.

Pursuant to Article 64.05, appellant appeals the determinations made by the trial court. See *Kutzner v. State*, 75 S.W.3d 427, 435 (Tex.Cr.App.2002).

Appellant did not testify at the 1995 trial. He presented no evidence at the trial. The taped telephone conversations between the victim's mother and appellant show the following statements:

[THE VICTIM'S MOTHER]: What you did was—

[APPELLANT]: She didn't have a mark. She did not get hurt one bit, not even a scratch.

[THE VICTIM'S MOTHER]: Yeah, she got hurt.

[APPELLANT]: She didn't get-there wasn't no intercourse to it. I've done everything for them for four years and you know that.

[THE VICTIM'S MOTHER]: It wasn't because you didn't try and you know that. I don't think that you have faced up to the realization about everything you did. I really don't.

[APPELLANT]: I don't think she realizes what all I've done for her for four years, either.

[THE VICTIM'S MOTHER]: That don't make it okay.

\* \* \*

[THE VICTIM'S MOTHER]: Have you really faced head on with what a bad thing you did?

[APPELLANT]: I sure have. All I've been asking for is forgiveness—

\* \* \*

[APPELLANT]: Yeah. Remember that time when they needed a hundred dollars for something and she couldn't get no money nowhere and they would have been thrown out in the streets if I hadn't helped them. I realize what I've done.

[THE VICTIM'S MOTHER]: That didn't give you the right to do what you did.

[APPELLANT]: I know.

[THE VICTIM'S MOTHER]: You don't pay for that. You don't—you don't earn the—

[APPELLANT]: I know what I've done and I've been begging for her forgiveness for—I don't think she realizes what's fixing to happen to me or she don't care. I just want her to think about what all I've done for her and

helped her and everything, have her mercy on me.

[THE VICTIM'S MOTHER]: You don't earn the right to attack somebody. Don't you understand that?

[APPELLANT]: I didn't hurt her.

[THE VICTIM'S MOTHER]: Yeah, you hurt her.

[APPELLANT]: Her feelings.

[THE VICTIM'S MOTHER]: Yeah, you hurt her. She's never going to get over it.

[APPELLANT]: I think she's already over it. She's with Blue and they're probably out partying and everything else. She's over it now.

[THE VICTIM'S MOTHER]: No, she ain't over it.

[APPELLANT]: (Unintelligible).

[THE VICTIM'S MOTHER]: She ain't over it.

\* \* \*

[APPELLANT]: The State has offered me 45 years. I'm pleading not guilty. I don't have no choice. I can't do no 45 years or no 20 or 25. You know that. I'm 40 years old.

[THE VICTIM'S MOTHER]: Well, you didn't think about that when you did it, did you?

[APPELLANT]: No, because the whiskey was thinking for me.

\* \* \*

[THE VICTIM'S MOTHER]: If you hadn't done it in the first place, none of this would be happening. Don't you realize that?

[APPELLANT]: I know that.

[THE VICTIM'S MOTHER]: No, you don't.

* * *

[THE VICTIM'S MOTHER]: Well, I don't think you realize the seriousness of what you did. Because you're a man you never did see—

[APPELLANT]: I realized it.

[THE VICTIM'S MOTHER]: You never—

[APPELLANT]: How many times have I told you I realized it? How many times have I told you?

■ We have reviewed the reporter's record of the 1995 trial, and we hold that the trial court's findings copied above are supported by the record. Appellant's admissions in the telephone conversations with the victim's mother placed appellant and the victim together at appellant's home at the time of the sexual assault.

The admissions clearly reveal that appellant was involved in some type of an attack upon the victim. Appellant's only complaint in the appeal of his aggravated sexual assault conviction in 1995 concerned an alleged voir dire error. There was no issue on appeal regarding the sufficiency of the evidence to prove appellant's identity as the assailant. *See Morris v. State,* No. 05–95–01401–CR, 1998 WL 245864 (Tex.App.-Dallas 1998, pet'n ref'd)(not designated for publication). The medical doctor who examined the victim following the sexual assault found "no motile sperm" in the victim's vaginal vault. In an affidavit, appellant stated that he had:

> [R]eason to believe that should a hearing be granted and DNA Testing ordered in my case, that the Court and medical expert will find that the spermatozoa found in the complainant is either [the victim's] boyfriend or her husband or some conspirator other than I.

The court in *Bell v. State,* 90 S.W.3d 301, 308 (Tex.Cr.App.2002), stated: "Chapter 64 requires that identity 'was or is' an issue, not that future DNA testing could

raise the issue." The issue in the 1995 conviction was not identity. The issue was whether penetration occurred.

We hold that the trial court did not err in denying appellant's motion for DNA testing. *See Green v. State,* 100 S.W.3d 344 (Tex.App.-San Antonio 2002)(pet'n filed); *In re McBride,* 82 S.W.3d 395 (Tex. App.-Austin 2002, no pet'n). Appellant's first point of error is overruled.

In his second point, appellant cites *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and contends that he was denied the effective assistance of counsel in violation of the U.S. CONST. amend. VI. The court in *Bell* noted that the Texas Court of Criminal Appeals has not decided whether a convicted person may raise a claim of ineffective assistance arising from a hearing under Chapter 64 of the Texas Code of Criminal Procedure.

■ We hold that a convicted person under Chapter 64, like a convicted applicant under TEX. CODE CRIM. PRO. ANN. art. 11.071 (Vernon Supp.2003) who files a writ of habeas corpus, does not have a federal or state constitutional right to effective assistance of counsel. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ex parte Graves,* 70 S.W.3d 103, 110 (Tex.Cr.App. 2002); and *Ex parte Mines,* 26 S.W.3d 910, 913–16 (Tex.Cr.App.2000). The court in *Ex parte Graves* observed that the providing of counsel by the State in postconviction proceedings does not "turn a legislative act of grace into a constitutional right." *Ex parte Graves,* supra at 113. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.