In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00083-CV


______________________________






IN THE MATTER OF THE MARRIAGE OF


CONNIE L. MOORE AND JOHNNY MOORE, JR.






 


On Appeal from the 19th Judicial District Court


McLennan County, Texas


Trial Court No. 2006-3895-1




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Johnny Moore, Jr., appellant, filed a notice of appeal in this case June 11, 2007. Moore has
not filed a docketing statement with this Court as required by Rule 32 of the Texas Rules of
Appellate Procedure, nor has he paid a filing fee or made any claim of indigency. See Tex. R. App.
P. 32. There is nothing in the record to indicate Moore has made efforts to have either the clerk's
record or reporter's record filed with this Court, and he has not filed a brief. We have attempted to
contact Moore, but all mail sent to his last known address has been returned with the notations
"insufficient address" and "unable to forward." (1) 

 We have received no communication from Moore. Pursuant to Rule 42.3(b) of the Texas
Rules of Appellate Procedure, we dismiss this appeal for want of prosecution. See Tex. R. App. P.
42.3(b).


 Jack Carter

 Justice


Date Submitted: October 11, 2007 

Date Decided: October 12, 2007


1. We have also contacted the district clerk of McLennan County, and the only address she has
for Moore is the same address we have in our records.


justify">                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 99-0039X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            During an evening of drinking beer while driving his pickup truck around Harrison County,
Ray Dale Hooks hit and killed Roger Carney with the truck. In a voluntary statement given to an
investigator, Hooks admitted that he had been driving around, drinking beer since about 4:00 p.m.
the day of the accident, and that he hit Carney with his truck. At trial, Hooks pled not guilty to
intoxication manslaughter, but guilty to leaving the accident scene. The jury found Hooks guilty of
both offenses. Hooks was sentenced to life imprisonment. On direct appeal, this Court affirmed
Hooks' convictions. After his convictions were affirmed, Hooks filed a habeas corpus proceeding. 
He also pursued post-conviction DNA testing litigation seeking analysis of blood and hair samples. 
From the trial court's denial of his request for DNA testing, Hooks appeals.
            In his pro se brief, Hooks complains that the trial court improperly denied his motion for
post-conviction DNA testing based in part on an imaginative, but unsupported, conspiracy theory. 
He suggests that the officer who collected DNA samples from Hooks and Carney after the incident
intentionally switched them and "concocted a scene" falsely portraying Hooks as guilty. Hooks
further suggests that the officer was part of an "endless conspiracy" against him, a conspiracy that
also involved Hooks' appointed counsel, the prosecuting attorney, and the trial judge. In his brief
on  the  merits,  Hooks  claims  that  identity  was  an  issue  in  his  underlying  trial  as  required  by
Chapter 64 of the Texas Code of Criminal Procedure, the trial court erred in dealing with Hooks' bill
of exceptions, appointed counsel provided ineffective assistance in the DNA testing litigation, the
trial judge should have been disqualified from the DNA testing litigation, and the evidence in the
original trial was insufficient to show that Hooks was intoxicated.
            We find these assertions without merit and affirm the judgment, for five reasons:
(1)since identity was not an issue in his original trial, Hooks is not entitled to post-conviction DNA testing;
 
(2)the trial court's handling of Hooks' bill of exceptions in the DNA testing litigation
was not reversible error;
 
(3)ineffective assistance of counsel is not an available issue in post-conviction DNA
testing litigation;
 
(4)we have no jurisdiction in this action to review the failure to disqualify or recuse the
trial judge from the related habeas corpus proceeding; and
 
(5)we have no jurisdiction in this action to review the sufficiency of the evidence to
support Hooks' underlying conviction.

(1) Since Identity Was Not an Issue in His Original Trial, Hooks Is Not Entitled to Post-Conviction 
 DNA Testing

            We apply a bifurcated standard of review to determine whether the trial court properly denied
an appellant's request for post-conviction DNA testing. Rivera v. State, 89 S.W.3d 55, 59 (Tex.
Crim. App. 2002); see Smith v. State, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005). We "afford
almost total deference to the trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues." Rivera, 89 S.W.3d at 59.
            Chapter 64 of the Texas Code of Criminal Procedure governs how a convicted person may
obtain DNA testing. Specifically, Article 64.03(a)(1)(B) allows a court to order DNA testing only 
if "identity was or is an issue in the case[,]" not when future DNA testing could raise the issue. See
Tex. Code Crim. Proc. Ann. art. 64.03(a) (Vernon Supp. 2006); Bell v. State, 90 S.W.3d 301, 308
(Tex. Crim. App. 2002). The fact that identity could become an issue pending the results of DNA
testing is irrelevant. Bell, 90 S.W.3d at 308. Further, the possibility that the DNA samples taken
may not belong to an appellant is insufficient to overrule the trial court's determination that DNA
testing was unwarranted. See id. at 306 (asserting that biological samples might belong to someone
else, without more, is not affirmative evidence of appellant's innocence). If the applicant fails to
show that testing would change the trial's outcome, the court must deny the request. Id. at 304–05.
            Hooks pled guilty to the charge that his vehicle was involved in an accident that caused
Carney's death, but pled not guilty to intoxication manslaughter. The trial court specifically found
that DNA testing would neither prove nor disprove the identity of the operator of the vehicle which
struck and killed the victim. The trial court further held as a matter of law that identity was not an
issue. As the State points out, Hooks never contests that he was driving the vehicle which struck the
victim, instead repeatedly admitting, "I hit the person with my truck."
            Hooks asks us to broaden the scope of the term "identity" in Article 64.03 to include the
identity of DNA samples, but doing so would render the word "identity" meaningless. Adopting
Hooks' definition would allow an appellant to obtain a DNA test when the identity of any substance,
evidence, or person even remotely involved in the case was disputed. An appellant could raise the
issue of identity when it never existed at trial, thus not only negating the plain meaning of the "was
or is" language in the statute, but also contradicting the Legislature's directive to place the burden
on the appellant to show that DNA testing is warranted. See id. at 306 (holding appellant has burden
to show Chapter 64 statutory requirements are met).
            We agree with the State that the identity of the person who caused Carney's death was not
and is not an issue. For the foregoing reasons, we overrule this point of error.
(2) The Trial Court's Handling of Hooks' Bill of Exceptions in the DNA Testing Litigation 
 Was Not Reversible Error

            Hooks suggests that he is entitled to a new Chapter 64 proceeding because the trial court
failed to rule or hold a hearing on his formal bill of exceptions. In the bill, Hooks complains that,
in denying his request for DNA testing, the trial court failed to consider the affidavits of a Kenneth
Paul Cary and Christy Cary.
            The purpose of a bill of exceptions is to preserve for the appellate court evidence excluded
at trial. See Tex. R. App. P. 33.2. The affidavits of Mr. and Mrs. Cary and the formal bill of
exceptions are included in the appellate record. Thus, despite Hooks' complaints, the record includes
all the evidence he claims was excluded. Additionally, Hooks has not shown that the trial court's
failure to act on the bill of exceptions harmed him. Tex. R. App. P. 44.2(b); see Routier v. State,
112 S.W.3d 554, 575 (Tex. Crim. App. 2003). We note that the only other information contained
in the bill of exceptions does not even relate to any claims addressable in this limited appeal under
Chapter 64. See Routier, 112 S.W.3d at 575. The bill of exceptions and the Cary affidavits do not
show that identity was or is an issue. Therefore, Hooks was not harmed by the trial court's handling
of the bill of exceptions. We overrule this point of error.
(3) Ineffective Assistance of Counsel Is Not an Available Issue in Post-Conviction DNA Testing 
 Litigation

            A prisoner has no federal or state constitutional right to counsel in a post-conviction
collateral attack. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Winters v. Presiding Judge of
the Crim. Dist. Court No. Three, 118 S.W.3d 773, 774 (Tex. Crim. App. 2003). Challenging the
denial of post-conviction DNA testing is a collateral attack. Winters, 118 S.W.3d at 774; see In re
Beasley, 107 S.W.3d 696, 697 (Tex. App.—Austin 2003, no pet.). Thus, there is no constitutional
right  to  counsel  when  a  prisoner  challenges  a  court's  denial  of  post-conviction  DNA  testing. 
Ex parte Graves, 70 S.W.3d 103, 113 (Tex. Crim. App. 2002); see Beasley, 107 S.W.3d at 697. 
Logically then, because there is no constitutional right to counsel, there can be no constitutional right
to effective assistance of counsel. Coleman v. Thompson, 501 U.S. 722, 752 (1991).
            In his brief, Hooks acknowledges that this Court—joined by all but one of our sister appellate
courts—does not recognize the constitutional right to effective assistance of counsel in Chapter 64
proceedings. He requests, however, that this Court ignore precedent and adopt a new rule. We
decline this invitation. Even though Chapter 64 provides a statutory mechanism by which to appoint
counsel, this Court will not "turn a legislative act of grace into a constitutional right." Graves, 70
S.W.3d at 110; see Morris v. State, 110 S.W.3d 100 (Tex. App.—Eastland 2003, pet. ref'd).
            The Texas Court of Criminal Appeals has recently expressly left open this very issue:
Although we need not decide whether another remedy is available in a case in which
a convicted person did not receive adequate assistance of counsel in a Chapter 64
proceeding, we may observe that, in some cases, a convicted person may get relief
from defective representation by counsel through appeal under that chapter. 

Baker v. State, 185 S.W.3d 894, 897 (Tex. Crim. App. 2006). We are yet inclined to stay with the
holdings of the majority of our sister courts of appeals, until the Texas Court of Criminal Appeals
rules to the contrary. See Hughes v. State, 135 S.W.3d 926, 928 (Tex. App.—Dallas 2004, pet.
ref'd); Morris, 110 S.W.3d at 103; Beasley, 107 S.W.3d at 697; Frischenmeyer v. State, No. 06-02-00124-CR, 2003 Tex. App. LEXIS 4207, at *2 (Tex. App.—Texarkana Mar. 24, 2003, no pet.)
(mem. op.) (not designated for publication). But see Ard v. State, 191 S.W.3d 342, 345–46 (Tex.
App.—Waco 2006, no pet. h.) (holding ineffective assistance of counsel may be raised in Chapter
64 appeal).
            Even if Hooks did have a constitutional right to effective assistance of counsel, he has failed
to establish that his counsel was in fact ineffective. To succeed on an ineffective assistance of
counsel claim, an appellant must prove by a preponderance of the evidence that (1) counsel's
performance was deficient and (2) the deficient performance prejudiced the defendant. Strickland
v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is not deficient if it meets or
exceeds  an  objective  standard  of  professional  reasonableness.  Id. at 688; see Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Further, counsel's performance must be given great
judicial deference as it is presumed to fall "within the wide range of reasonable professional
assistance." Strickland, 466 U.S. at 689. 
            Hooks alleges that his appointed counsel's performance was deficient because counsel failed
to notify Hooks that he worked in the same building as the prosecuting attorney, thus hiding a
conflict of interest. Hooks claims, albeit unsubstantiated by the record, that the prosecuting attorney
had access to the appointed counsel's mail, files, faxes, and secretary because both attorneys worked
in the same building. Even if this were true, Hooks still provides no support for the proposition that
attorneys have a duty to disclose to their clients that they work in the same building as the opposing
party. If that were the case, then attorneys would be required to know every tenant that moves in and
out of the building where they have an office, no matter its size. Further, attorneys would be
required to know every tenant of the buildings in which any branch of their firm or company has an
office. That is beyond the requirements of the law and beyond reason.
            Additionally, even if the appointed counsel's nondisclosure was objectionable, Hooks still
failed to show that the result would have been different had counsel notified Hooks of the office
arrangements. Thompson, 9 S.W.3d at 812. The trial court properly denied Hooks' request for DNA
testing because Hooks failed to meet the requirements of Article 64.01(b). Hooks' bare claim that
his counsel's behavior violated his due process rights, without more, fails to overcome the
presumption of reasonable assistance. We overrule this point of error.

(4) We Have No Jurisdiction in this Action to Review the Failure to Recuse or Disqualify the Trial 
 Judge from the Related Habeas Corpus Proceeding
            While Article 64.05 of the Texas Code of Criminal Procedure specifically gives a convicted
person the right to appeal a denial of DNA testing, there is nothing in the statute or otherwise that
allows an appellate court to review, under the guise of a DNA testing appeal, anything beyond the
scope of the DNA testing litigation. This Court lacks jurisdiction over issues not strictly arising out
of the denial of post-conviction DNA testing. Wolfe v. State, 120 S.W.3d 368, 370 (Tex. Crim. App.
2003). 
            In April 2003, Hooks did file a motion to recuse the trial judge from acting in Hooks' related
habeas corpus proceeding. But Hooks did not instigate the Chapter 64 proceedings until March
2004, and he did not seek recusal or disqualification of the trial judge in this DNA testing litigation. 
Hooks' motion to recuse the trial judge was part of his habeas corpus proceeding, not this DNA
testing litigation. Thus, we lack jurisdiction to review this claim. We overrule this point of error.
(5) We Have No Jurisdiction in this Action to Review the Sufficiency of the Evidence to Support 
 Hooks' Underlying Conviction
            Hooks also requests this Court to remand for a new trial based on his claim that the trial
evidence of his intoxication was insufficient. In the same way as Hooks' issue about recusal of the
trial judge is not within the scope of appeal as set forth in Article 64.05, Hooks' issue concerning
sufficiency of the evidence in the underlying trial is not reviewable in this proceeding. See Tex.
Code Crim. Proc. Ann. art. 64.05 (Vernon Supp. 2006); Wolfe, 120 S.W.3d at 370 (appellant's
contention trial court erroneously denied appellant expert assistance was outside scope of Article
64.05, and thus nonreviewable).



            Having overruled all of Hooks' addressable points of error, we affirm the trial court's denial
of the motion for post-conviction DNA testing.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 13, 2006
Date Decided:             August 9, 2006

Publish