**Affirmed and Opinion Filed July 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00442-CR

**ROCKY ALLEN MORRIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F95-01315-U**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Rocky Allen Morris appeals the trial court's order granting his motion for post-conviction

DNA testing, which impliedly denied his request for certain biological materials to be tested. In

his sole issue on appeal, Morris argues the trial court erred when it failed to order DNA testing of

the vaginal smear. We conclude the trial court did not err. The trial court's order is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, a jury convicted Morris of aggravated sexual assault, found the enhancement

paragraph true, and assessed his punishment at sixty years of imprisonment and a $10,000 fine.

*Morris v. State*, 110 S.W.3d 100, 101 (Tex. App.—Eastland 2003, pet. ref'd)(*Morris II*); *Morris*

*v. State*, No. 05-95-01401-CR, 1998 WL 245864, at *1 (Tex. App.—Dallas May 18, 1998, pet.

ref'd, untimely filed)(not designated for publication)(*Morris I*). The trial court's judgment was

affirmed on appeal. *Morris I*, 1998 WL 245864, at *2.

In 2001, Morris filed his first motion for post-conviction DNA testing of biological material pursuant to Chapter 64 of the Texas Code of Criminal Procedure. *Morris II*, 110 S.W.3d at 101; *see also* TEX. CODE CRIM. PROC. ANN. art. 64.01–64.05 (West 2006 & Supp. 2014). The trial court denied the motion, finding that Morris's identity was not an issue in the case. *Morris II*, 110 S.W.3d at 101. On appeal, the court of appeals affirmed the trial court's denial of Morris's motion, concluding the trial court's findings were supported by the record because the issue at trial was whether penetration had occurred, not identity. *Morris II*, 110 S.W.3d at 102–03.

In 2008, the Dallas District Attorney's Office was working in partnership with the Innocence Project of Texas to review previously denied Chapter 64 motions. During that partnership, the District Attorney's Office and the Public Defender's Office executed a written agreement for the evidence in Morris's case to be transferred from the Southwestern Institute of Forensic Sciences (SWIFS) to Orchid Cellmark. As a result, Orchid Cellmark received debris collection swabs, vaginal swabs, buccal swabs of Morris, a biohazard bag containing cut or combed pubic hair and debris, and a glass vial containing a debris collection swab. The report of laboratory examination does not mention a vaginal smear. Orchid Cellmark conducted DNA testing on the debris collection swabs, vaginal swabs, and buccal swabs of Morris. Based on that testing, Orchid Cellmark informed the parties that Morris could not be excluded as the contributor of male DNA found on the sperm cell fractions of the vaginal swabs. Even though no Chapter 64 proceedings had been initiated, the test results were presented to the trial court in a proceeding that was video recorded by a documentary film crew.[1] Morris attempted to appeal the results of the DNA test, but the trial court denied his right to appeal on the ground that the testing was not conducted pursuant to Chapter 64.

---

[1] That video aired on the Discovery Channel in April 2009.

On October 14, 2011, Morris filed a second motion for post-conviction DNA testing pursuant to Chapter 64. Counsel was appointed for Morris and his counsel filed a formal motion for post-conviction DNA testing on March 14, 2012. In that motion, Morris requested:

> [F]orensic DNA testing of evidence containing biological material that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense but was not previously subjected to DNA testing. There is evidence susceptible to DNA testing. [SWIFS] has retained five pieces of physical evidence collected as part of the rape kit performed on the victim: [(1)] a vaginal swab; [(2)] a vaginal smear; [(3)] pubic hair combings; [(4)] pubic hair cuttings; and [(5)] debris collections (the gloves scissors, and other packaging from the rape kit). None of this evidence was subjected to DNA testing at the time of trial, but the Parkland physician that performed the rape examination observed intact spermatozoa on the vaginal smear.

Also, Morris requested that the trial court find identity was an issue in the case. *Compare Morris II*, 110 S.W.3d at 103 ("The issue in the 1995 conviction was not identity. The issue was whether penetration occurred.").

> The State responded, in part:

> Although Morris's first motion for post-conviction DNA testing under Chapter 64 was denied, Morris subsequently received DNA testing of evidence outside of Chapter 64. It appears, however, that Morris was under the impression that testing was being conducted pursuant to Chapter 64, with all of the statutory protections that Chapter 64 provides. Based on the unique circumstance of this case, and in the interests of justice, the State does not oppose Morris's request for post-conviction DNA testing of the vaginal swabs and comparison sample from Morris under Chapter 64.

However, the State asserted it was not waiving "any arguments regarding the favorability or legal significance of the test results." Further, the State acknowledged that it had the evidence in Orchid Cellmark's possession transferred to SWIFS and the vaginal swabs were currently in the possession of SWIFS. As a result, without a hearing, the trial court signed a written order noting, "the State does not oppose DNA testing of two vaginal swabs that still exist in connection with the case" and that Morris's motion was "unopposed," and granting Morris's

motion for "post-conviction DNA testing of the two vaginal swabs currently in the possession of SWIFS."

After conducting DNA testing on the vaginal swabs, SWIFS concluded Morris is "included as a possible source of, or contributor to, the DNA profiles" obtained from the vaginal swabs. SWIFS uploaded the DNA profile obtained from the sperm cell fraction into the Combined DNA Index System (CODIS) and received a "CODIS hit notification" informing the State of a positive association between the vaginal swab and a convicted offender sample in the Texas database. That sample belonged to Morris.

The trial court held a hearing pursuant to article 64.04 of the Texas Code of Criminal Procedure. On February 22, 2013, the trial court signed its findings on the results of the post-conviction DNA testing. The trial court found that the State agreed to the post-conviction DNA testing. Also, the trial court found:

> After examining the results of the DNA testing conducted in this case and the comparison made under article 64.035, [the trial court] FINDS that had these results been available during the trial of the offense, it is NOT reasonably probably that Morris would not have been convicted.

Although Morris's motion requested the above described "evidence," including a "vaginal smear," the record contains no objection by Morris to the trial court's order requiring testing of "the two vaginal swabs" or to the article 64.04 findings on the result of post-conviction DNA testing other than in his brief on appeal. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 64.05.

## II. DNA TESTING OF ADDITIONAL EVIDENCE

In issue one, Morris argues the trial court erred when it failed to order DNA testing of the vaginal smear. Although he also requested testing of the vaginal smear, the trial court ordered testing of only the vaginal swabs. Morris contends the vaginal smear was observed as having intact spermatozoa and was not subject to a questionable chain of custody. The State responds

–4–

that Morris received post-conviction DNA testing, not because he met his statutory burden, but because, in the interest of justice, the State agreed to the testing since Morris was unable to appeal the earlier testing results conducted outside of a Chapter 64 proceeding. Also, the State expressly did not oppose testing of "the vaginal swabs and a comparison sample from Morris." Finally, the State argues Morris cannot establish identity was or is an issue in the case and that he would not have been convicted had exculpatory results been obtained through DNA testing.

### A. Standard of Review

An appellate court reviews the trial court's ruling on a motion for post-conviction DNA testing under a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Under this standard, an appellate court affords "almost total deference" to the trial court's determination of historical-fact and application-of-law-to-fact issues that turn on an evaluation of witness credibility and demeanor, but reviews de novo all other application-of-law-to-fact issues. *Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011)(citing *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008)). When a trial court rules on a motion for post-conviction DNA testing without conducting a hearing, an appellate court reviews the trial court's ruling de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

### B. Applicable Law

Chapter 64 of the Texas Code of Criminal Procedure governs a convicted person's request for post-conviction DNA testing and contains multiple threshold requirements that must be met before a movant is entitled to such testing. TEX. CODE CRIM. PROC. ANN. art. 64.01–64.04. The convicting court may order post-conviction DNA testing only if it finds: (1) the evidence (a) still exists and is in a condition making DNA testing possible; and (b) has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect; and (2) identity was or is an issue in the case. TEX.

CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A), (B) (West Supp. 2014); *Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009). In addition, the trial court may order the requested post-conviction DNA testing only if "the convicted person establishes by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A); *Gutierrez*, 337 S.W.3d at 889. The convicted person bears the burden of meeting all statutory predicates. *See Routier*, 273 S.W.3d at 246.

The law of the case doctrine "provides that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal." *Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999); *Ex parte Granger*, 850 S.W.2d 513, 516 (Tex. Crim. App. 1993). It is a court-made doctrine designed to promote judicial consistency and efficiency by eliminating the need for appellate courts to prepare opinions discussing previously resolved matters. *Howlett*, 994 S.W.2d at 666; *Ex parte Granger*, 850 S.W.2d at 516. The doctrine assures trial courts that they can rely on the appellate court's disposition of an issue in presiding over the case and provides an incentive for trial courts to follow these decisions closely. *Howlett*, 994 S.W.2d at 666.

However, the application of the law of the case doctrine is flexible. *Howlett*, 994 S.W.2d at 666; *Ex parte Granger*, 850 S.W.2d at 516. An appellate court may reconsider its earlier disposition of a point of law if the court determines there are "exceptional" circumstances that mitigate against relying on its prior decision. *Howlett*, 994 S.W.2d at 666; *Ex parte Granger*, 850 S.W.2d at 516. Where the facts and issues are identical in a second appeal, the most common "exceptional" circumstance is that the earlier appears to have been "clearly erroneous." *Howlett*, 994 S.W.2d at 666; *Ex parte Granger*, 850 S.W.2d at 516.

### C. Application of the Law to the Facts

In his motion for post-conviction DNA testing, Morris requested a ruling that identity was an issue in the case. The trial court granted Morris's motion, made no finding as to identity being an issue, and noted that the State did not oppose DNA testing of the two vaginal swabs. Further, neither the trial court's order nor its findings on the results of the post-conviction DNA testing make any statutory findings pursuant to article 64.03(a)(1) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1). Morris made no objection in the trial court to the trial court's order or findings until he argued in his brief on appeal that the trial court erred in not ordering testing of the vaginal smear.

In *Morris II*, the court of appeals affirmed the trial court's denial of Morris's first motion for post-conviction DNA testing, concluding the trial record supported that penetration was the issue at trial, not identity. *Morris II*, 110 S.W.3d at 103. Specifically, the court of appeals stated Morris's "admissions in the telephone conversations with the victim's mother placed [Morris] and the victim together at [Morris's] home at the time of the sexual assault" and "[t]he admissions clearly reveal that [Morris] was involved in some type of attack upon the victim." *Morris II*, 110 S.W.3d at 103. Morris did not testify in the 1995 trial. *Morris II*, 110 S.W.3d at 101. Further, the court of appeals noted that in the appeal of his conviction, no issue was raised regarding the sufficiency of the evidence to prove Morris's identity as the assailant. The issue alleged only voir dire error. *Morris II*, 110 S.W.3d at 103; *Morris I*, 1998 WL 245864.

Morris did not argue in the trial court nor does he argue on appeal that there were "exceptional" circumstances that would require a reconsideration of the appellate court's resolution of the question of law in *Morris II*. Accordingly, the trial court's prior order denying Morris's first motion for post-conviction DNA testing, finding that identity was not an issue in the case, and the court of appeals's judgment affirming that order is the law of the case. *See*

*Howlett*, 994 S.W.2d at 666. As a result, Morris has failed to meet one of the requirements for post-conviction DNA testing of the vaginal smear.

Issue one is decided against Morris.

### III. CONCLUSION

The trial court did not err when it failed to order Morris's request for post-conviction DNA testing of the vaginal smear.

The trial court's order is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130442F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROCKY ALLEN MORRIS, Appellant

No. 05-13-00442-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F95-01315-U.
Opinion delivered by Justice Lang. Justices
Stoddart and Schenck participating.

Based on the Court's opinion of this date, the trial court's "Order Granting Rocky Morris's Motion for Post-Conviction DNA Testing" is **AFFIRMED**.

Judgment entered this 21st day of July, 2015.