# NO. 12-20-00154-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EDWARD HILL,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Edward Hill appeals the trial court's denial of his motion for forensic DNA testing filed pursuant to Texas Code of Criminal Procedure Chapter 64. In five issues, Appellant challenges (1) his counsel's effectiveness, (2) the trial court's failure to order DNA testing on a latex glove, and (3) the trial court's failure to consider (a) the results of DNA testing on the murder weapon, (b) his claim that identity is an issue in the case, and (c) his right to due course of law in determining whether the glove should be tested. We affirm.

## BACKGROUND

Appellant was convicted of capital murder and sentenced to imprisonment for life in connection with the 1999 robbery and shooting death of convenience store operator Bo Hinton. We affirmed the conviction in *Hill v. State*, No. 12-03-00020-CR, 2004 WL 2158030 (Tex. App.—Tyler Sept. 22, 2004, pet. ref'd) (not designated for publication). In our legal sufficiency analysis in *Hill*, we summarized the offense facts as follows:

> In the instant case, both eyewitness testimony and DNA evidence link Appellant to the scene of the crime during the time frame in which the crime was committed. Curtis Lowe testified that he saw Andrews and two black males approaching Loving's Food Store as he was leaving the store at approximately 8:30 a.m. on August 18, 1999. Christina Carillo, a store employee,

arrived for work before 9:00 a.m. but did not enter the store because she observed through the window that Hinton was inside fighting with two other individuals. Brenda London, Angela Hood, and Leo Henry testified that, shortly after 9:00 a.m., they saw three black males running away from Loving's Food Store.

With the aid of information provided by witnesses, Tyler police officers proceeded to the home of Andrews's mother, Betty Andrews. At about this same time, police arrived at Loving's Food Store to find Hinton bleeding to death from five gunshot wounds. When the officers arrived at the Andrews home, they found Appellant, Davis, and Andrews. When Patrolman Robert Matthews of the Tyler Police Department approached the three men, who were standing in the yard, Appellant fled. Other Tyler police officers pursued and captured Appellant. Patrol Officer Luis Correa saw Appellant drop a bloody tee shirt as he fled. Officer Correa also saw Appellant take a large sum of cash out of his pocket along with a latex glove and drop them three or four feet from where he was subsequently apprehended.

Hinton's blood was found on the tennis shoes Appellant was wearing at the time of his arrest. Bob Henderson, a forensic consultant specializing in blood stain pattern analysis and crime scene reconstruction, testified that the blood on the tennis shoes was consistent with impact spatter, which occurs at close range when a victim's blood is being spilled. He also testified that there were blood spatters on the shorts Appellant was wearing. He testified that these blood spatters would put the individual wearing the shorts and tennis shoes in very close proximity to Hinton when he was shot.

*Id.* at *2. Hinton's DNA was found on the clothing and tennis shoes Appellant was wearing at the time of his arrest, the shirt police officers saw him wearing when they approached and dropping just before his arrest, and the revolver found on the path where the individuals were seen fleeing the crime scene. *Id.* at *3-4. No fingerprints were found on the revolver. *Id.* at *3. Prior to the offense, Appellant and his codefendants knew that Hinton would likely be armed and they would need a gun to complete the robbery. *Id.* at *5.

After his conviction, Appellant filed numerous applications for writ of habeas corpus, which were denied or dismissed, and his motion for forensic DNA testing of (1) the .22 caliber revolver admitted into evidence at trial and believed to be the murder weapon and (2) the latex glove, also admitted into evidence, that Appellant removed from his pocket and discarded just before his arrest. The trial court appointed attorney Mitch Adams to represent Appellant and requested a report from Adams regarding Appellant's motion. The court ordered the State to deliver to the court any physical evidence that might be subject to DNA testing or a written explanation of why the State could not deliver the evidence to the court.

The State filed a response stating that because the glove and revolver were admitted into evidence, they were not in the State's possession. Upon investigation, the State determined that the district clerk's office had possession of the glove. However, after inquiring of the district

clerk's office, the Tyler Police Department, and the Smith County Sheriff's Office, the State concluded that the revolver was either misplaced or destroyed. The State further asserted that Appellant's motion does not show his entitlement to the testing of either item under Chapter 64. Appellant's counsel did not file a response. Appellant notified the trial court that he wished to proceed pro se, and the court permitted him to do so.

After taking judicial notice of the file, the State's response, and Appellant's motion and documents, the trial court found that Appellant failed to meet his burden of proof under Article 64.03(a)[1] for two reasons. First, the court found that the revolver was not preserved and was unavailable for testing.[2] Next, the court found that Appellant failed to establish by a preponderance of the evidence that if exculpatory results were obtained from the glove, he would not have been convicted.[3] Accordingly, the court denied Appellant's motion for DNA testing. This appeal followed.

## DENIAL OF DNA TESTING MOTION

In Appellant's first issue, he argues that the trial court erred by failing to order DNA testing on the latex glove.

### Standard of Review and Applicable Law

There is no freestanding due process right to DNA testing, and the task of fashioning rules to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice belongs primarily to the legislature. *Ramirez v. State*, 621 S.W.3d 711, 717 (Tex. Crim. App. 2021). The Texas Legislature created a process for such testing in Chapter 64. *See id.*

Under Chapter 64, the convicting court must order DNA testing only if the court finds that

1. the evidence "still exists and is in a condition making DNA testing possible";

2. the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect";

---

[1] TEX. CODE CRIM. PROC. ANN. art. 64.03(a) (West 2018).

[2] *See id.* art. 64.03(a)(1)(A)(i) (requiring that evidence exist and be in a condition making DNA testing possible).

[3] *See id.* art. 64.03(a)(2)(A).

3. "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and"

4. "identity was or is an issue in the case[.]"

*Id.*; TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1). Additionally, the convicted person must establish by a preponderance of the evidence that

1. he "would not have been convicted if exculpatory results had been obtained through DNA testing; and"

2. "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice."

*Ramirez*, 621 S.W.3d at 717-18; TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2).

In reviewing a judge's ruling on a Chapter 64 motion, we give almost total deference to the judge's resolution of historical fact issues supported by the record and application of law to fact issues turning on witness credibility and demeanor. *Ramirez*, 621 S.W.3d at 718. We consider all other application of law to fact questions de novo. *Id.*

## Analysis

Appellant argues that he met his burden under Chapter 64 regarding the testing of the glove. He contends that a DNA test showing an absence of Hinton's DNA on the glove would exculpate him as the shooter, resulting in a reasonable probability that he would not have been prosecuted for capital murder. We disagree.

In cases involving accomplices, a defendant can meet his burden under Article 64.03(a)(2)(A) only if he can show that testing, if exculpatory, will establish that he did not commit the crime as either a principal or a party. *Id.* at 723. "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2021). Further,

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b) (West 2021).

In this case, a DNA test on the glove failing to reveal the presence of Hinton's DNA might tend to show that the shooter was not wearing the glove on his shooting hand at the time of the shooting, but it would not establish Appellant's innocence. First, it would not show that Appellant was not the shooter, as he contends. The evidence shows that no fingerprints were found on the revolver, which supports the theory that the shooter was wearing a glove when he shot Hinton. But Appellant could have shot Hinton wearing a different glove on his shooting hand and discarded it elsewhere. Furthermore, if testing on the glove failed to reveal the presence of Hinton's DNA, it would do little or nothing to exculpate Appellant as a party to the offense. *See id.* §§ 7.02(a)(2), (b); *Ramirez*, 621 S.W.3d at 723.

An "exculpatory" or "favorable" DNA test result must be the sort of evidence that would affirmatively cast doubt on the conviction's validity; otherwise, DNA testing would simply "muddy the waters." *Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011). Given the evidence that (1) Appellant and his codefendants knew they would need a gun to commit the robbery, (2) two people were fighting Hinton just before he was shot, (3) Appellant fled when the police arrived, (4) Appellant discarded a bloody shirt, a latex glove, and a large amount of cash just before his arrest, and (5) Appellant's clothes contained close range blood spatter matching Hinton's DNA, testing of the glove "might muddy the waters," but could not produce truly exculpatory evidence. *See id.*; *Ramirez*, 621 S.W.3d at 723 (based on evidence in case, DNA testing of hats worn by two of several perpetrators could not produce true exculpatory evidence regarding appellant). We conclude that Appellant has not established by a preponderance of the evidence that he would not have been convicted if DNA testing on the glove failed to reveal the presence of Hinton's DNA, and, therefore, the trial court properly denied his motion for DNA testing of the glove. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2); *Ramirez*, 621 S.W.3d at 717-18. Accordingly, we overrule Appellant's first issue.

### FAILURE TO CONSIDER PRIOR DNA TESTING

In Appellant's second issue, he argues that the trial court erred by "failing to consider the positive DNA test on [the revolver] to determine if [the glove] should be tested." He contends that "the results of the previous test establish that the victim [sic] DNA was on [the revolver] that was destory [sic] or misplaced in the custody of the State and the trial court taking judicial notice of this fact but refusing to consider its relevancy to the testing of [the glove] was a [sic] error."

5

Appellant points to nothing in the record that indicates the court did not consider the prior testing of the revolver in determining whether to order DNA testing on the glove, and we find no such indication. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument with appropriate citations to authorities). Accordingly, we overrule Appellant's second issue.

**FAILURE TO CONSIDER IDENTITY CLAIM**

In Appellant's third issue, he argues that the trial court erred by failing to consider his "identity claim for the testing of [the glove and revolver]." He asserts that he "raised the question of identity in his Affidavit in Support of Motion for Forensic DNA Testing when he stated, 'the State of Texas indicted affiant as causing the death of the victim by shooting him with a firearm. The State of Texas theory was affiant wore a latex glove during the robbery and shooting death of the victim and used the latex glove found on affiant as evidence to support this theory.'" Appellant contends that the trial court erred by failing to consider certain identity related evidence adduced at trial and other identity related evidence subsequently presented in his applications for writ of habeas corpus. Appellant's argument fails for several reasons.

First, the trial court did not deny Appellant's motion for DNA testing on the grounds that identity was not and is not an issue in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(c). This tends to show that the court considered identity an issue. Next, nothing in the record indicates that the court did not consider all the evidence adduced at trial. Finally, the court should not have considered the evidence presented in Appellant's applications for writ of habeas corpus. In making an Article 64.03(a)(2)(A) determination, we do not consider post-trial factual developments. *Ramirez*, 621 S.W.3d at 723. Instead, we limit our review to whether exculpatory results would alter the landscape if added to the mix of evidence that was available at the time of trial. *Id.* Appellant argues that in addition to the trial evidence, the trial court should have considered evidence presented in his post-conviction habeas applications. Because this evidence was developed after Appellant's trial, the trial court could not properly consider it in ruling on Appellant's DNA testing motion. *See id.* For all of these reasons, we overrule Appellant's third issue.

6

In Appellant's fourth issue, he argues that the trial court erred by failing to consider his right to due course of law, which, he contends, was violated by the State's "failure to preserve material evidence [the revolver] for the testing of [the glove]." Appellant does not explain the relevance of the missing status of the revolver, which was previously subjected to DNA testing, to the issue of whether the glove should be tested, and we see none. *See* TEX. R. APP. P. 38.1(i). Accordingly, we overrule Appellant's fourth issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Appellant's fifth issue, he argues that he received ineffective assistance of counsel during his DNA testing proceedings.

### Standard of Review and Applicable Law

A convicted person is entitled to counsel during a proceeding under Chapter 64. TEX. CODE CRIM. PROC. ANN. art. 64.01(c) (West 2018). A convicting court must appoint counsel for a convicted person if he informs the court that he wishes to submit a motion under Chapter 64, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent. *Id.*

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* An appellant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. We indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. It is Appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*; *Tong*, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely is the record on direct appeal sufficiently developed to fairly evaluate the merits of a claim of ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson*, 9 S.W.3d at 813. Appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail. *Tong*, 25 S.W.3d at 712.

**Analysis**

The record in this case shows that Appellant filed his motion for DNA testing and supporting affidavit on July 25, 2018. In the motion, Appellant requested that the trial court appoint counsel. The State filed its response on October 29. On December 26, the trial court entered an order stating the following:

> This Court previously appointed attorney Mitch Adams to represent Petitioner Edward Hill in regard to his request for DNA testing. The Court also ordered the State of Texas to review its records for any physical evidence which might be subject to DNA testing which is still available and within 60 days from this date, either deliver the evidence to the court along with a description of the condition of the evidence or explain in writing why the State cannot deliver the evidence to the Court. The State filed its response and served it on counsel for Petitioner on October 29, 2018. The Court will consider the current motion filed by Petitioner and the State's response without a live hearing on January 18, 2019. Counsel for the State and Petitioner should file any other materials they wish to be considered on or before January 11, 2019.

8

The record contains no indication that a hearing, live or otherwise, was held on January 18. On February 24, 2020, Appellant, apparently under the impression that the trial court denied his DNA testing motion, filed a notice of appeal, motion to withdraw Adams as counsel, and motion to proceed pro se. In his motion to proceed pro se, Appellant stated the following:

> The Defendant has no desire to allow Attorney Mitch Adams or any other court appointed attorney to represent him in this cause for appeal. Therefore the Defendant invoke [sic] Article I Section 10 of the Texas Constitution as authority to represent himself in this matter. The Defendant has education of the law in which he has recieve [sic] a Paralegal Certificate, also the Defendant brings the Court to the attention that the Motion for Forensic DNA Testing was filed by him Pro Se showing additional support of the Defendant [sic] ability to act on his own regarding this matter.

On April 6, 2020, the trial court entered its order denying Appellant's motion for DNA testing. In the order, the court provided the following procedural summary:

> Petitioner Edward Hill filed a request for DNA testing. The Court, after considering such motion, appointed attorney Mitch Adams to represent Petitioner Hill. The Court notified Petitioner's counsel of the appointment and requested a report regarding Petitioner's request. The Court ordered the State's counsel to review its records and deliver the available evidence to the Court. The State filed its response identifying the evidence that remained in the custody of the court reporter or Tyler Police Department. Petitioner's counsel did not file a response and Petitioner has notified the Court that he wishes to proceed pro se, which the Court permits. If Petitioner decides he wishes to have counsel appointed at a later date, Petitioner must notify the Court of that decision. The Court takes judicial notice of the file, the State's Response, and Petitioner's written motion and other documents.

On appeal, Appellant argues that he received ineffective assistance of counsel because Adams failed to (1) "challenge the State of Texas [sic] response," (2) "represent Appellant in the entire proceeding of the DNA hearing," and (3) "file Notice of Appeal after the trial court deny [sic] Appellant [sic] Pro Se DNA motion." He contends counsel's deficient performance prejudiced him by causing the trial court to fail to consider the prior DNA testing on the revolver, fail to consider Appellant's identity claim, fail to consider Appellant's right to due course of law, and ultimately fail to order DNA testing on the glove. We disagree.

Initially, we observe that the courts of appeals are divided regarding the cognizability of an ineffective assistance of counsel claim in an appeal from a trial court's ruling under Chapter 64. *See, e.g.*, **Hooks v. State**, 203 S.W.3d 861, 865 (Tex. App.—Texarkana 2006, pet. ref'd) (claim not cognizable); **Hughes v. State**, 135 S.W.3d 926, 927-28 (Tex. App.—Dallas 2004, pet.

ref'd) (same); ***In re Beasley***, 107 S.W.3d 696, 697 (Tex. App.—Austin 2003, no pet.) (same); ***Morris v. State***, 110 S.W.3d 100, 103 (Tex. App.—Eastland 2003, pet. ref'd) (same); ***Ard v. State***, 191 S.W.3d 342, 344-46 (Tex. App.—Waco 2006, pet. ref'd) (claim cognizable). In ***Bell v. State***, the court of criminal appeals expressly declined to decide the issue, instead assuming arguendo that the claim could be raised and overruling it on its merits. 90 S.W.3d 301, 307-08 (Tex. Crim. App. 2002). In ***Ex parte Baker****,* the court of criminal appeals held that the post-conviction writ of habeas corpus was not available for the applicant's claim of ineffective assistance of counsel in a Chapter 64 proceeding but observed that other remedies may be available in such cases. 185 S.W.3d 894, 897-98 (Tex. Crim. App. 2006). Specifically, the court noted that "in some cases, a convicted person may get relief from defective representation by counsel through an appeal under that chapter." ***Id.*** The court further observed that "Chapter 64 does not prohibit a second, or successive, motion for forensic DNA testing[.]" ***Id.***

We need not decide whether Appellant's ineffective assistance claim is cognizable because, even if it is, he fails to meet his burden of establishing that Adams's performance was deficient and his deficient performance prejudiced Appellant's case. *See* ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712. Regarding Adams's failure to challenge the State's response, the record does not show why Adams did not do so. *See* ***Bone***, 77 S.W.3d at 833 (rarely is record on direct appeal sufficiently developed to fairly evaluate merits of ineffectiveness claim). Moreover, Appellant does not specify any part of the State's response that Adams should have challenged. *See* Tex. R. App. P. 38.1(i); *see also* ***Doyle v. State***, 875 S.W.2d 21, 23 (Tex. App.—Tyler 1994, no pet.) ("failure to object to that which is unobjectionable is not ineffective assistance of counsel"). Therefore, Appellant fails to establish that Adams's performance was deficient. *See* ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712.

Furthermore, even if Adams's performance was deficient because of his failure to challenge the State's response, Appellant fails to show how the deficient performance prejudiced his case by, as he contends, causing the trial court to fail to consider the prior DNA testing on the revolver, fail to consider Appellant's identity claim, fail to consider Appellant's right to due course of law, and ultimately fail to order DNA testing on the glove. *See* ***id.*** As we observed above, nothing in the record indicates that the trial court did not consider everything it could properly consider in making its decision on Appellant's motion. Furthermore, Appellant fails to

demonstrate how any challenge to the State's response could have resulted in the trial court's granting of Appellant's motion.

Regarding Adams's failure to file a notice of appeal, we observe that Appellant filed his motion to withdraw Adams as counsel, motion to proceed pro se, and notice of appeal before the trial court denied the motion for DNA testing. Because the trial court granted Appellant's motions to withdraw Adams and proceed pro se before it denied the DNA testing motion, it would have been premature for Adams to file a notice of appeal during his representation of Appellant. Consequently, his failure to do so cannot be considered deficient. Moreover, because his notice of appeal was filed and considered timely, Appellant cannot establish prejudice in this regard. Because Appellant fails to show that his trial counsel's performance was deficient, or how his counsel's performance prejudiced his case, he fails to meet his burden of proving ineffectiveness of counsel, if such a claim is cognizable here. *See id.* Accordingly, we overrule Appellant's fifth issue.

### DISPOSITION

Having overruled Appellant's first through fifth issues, we ***affirm*** the trial court's order denying his motion for forensic DNA testing.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 20, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 20, 2021**

**NO. 12-20-00154-CR**

**EDWARD HILL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 241-81325-99)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order denying Appellant's motion for forensic DNA testing.

It is therefore ORDERED, ADJUDGED and DECREED that the order denying Appellant's motion for forensic DNA testing of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*